UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-382-MOC-DSC

| | | |
|---|---|---|
| CHURCH EKKLASIA SOZO, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CVS HEALTH CORPORATION, et al., | ) ) ) | **ORDER** |
| Defendants. | ) ) | |

**THIS MATTER** comes before the Court on Motion to Dismiss, filed by Defendants

CVS Health Corporation and CVS Pharmacy, Inc. (Doc. No. 17).

## I.     BACKGROUND

Plaintiffs filed this action on Complaint on July 14, 2020, bringing numerous claims

against Defendants CVS Health Corporation and CVS Pharmacy, Inc. after pharmacists at a CVS

retail store refused to fill prescriptions for Suboxone. Plaintiffs filed a First Amended Complaint

(FAC) on November 5, 2020. (Doc. No. 12). Plaintiffs in this action include Church Ekklasia

Sozo, Inc., Henry Emery, Jeffrey Bishop, Jane Doe, and John Goodyear.

As amended, Plaintiffs' FAC asserts the following eleven claims: (1) failure to

accommodate in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (2)

disability discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.,

(3) discrimination in violation of the Affordable Care Act, 42 U.S.C. § 18116 et seq., (4)

discrimination through association in violation of the Americans with Disabilities Act, 42 U.S.C.

§ 12101 et seq., (5) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), (6)

1

tortious interference with contract, (7) tortious interference with prospective economic advantage, (8) defamation (per se and per quod), (9) unfair and deceptive trade practices, in violation of N.C. GEN. STAT. § 75-1.1 et seq., and (10) breach of legal duty. On December 7, 2020, Defendants moved to dismiss the FAC. Plaintiffs have filed a response, Defendants have filed a reply, and this Court held a hearing on the motion to dismiss on February 24, 2021. Thus, this matter is ripe for disposition.

The following facts are taken from Plaintiffs' FAC and are assumed true for purposes of this motion:

Plaintiff Henry Emery is a medical doctor residing in North Carolina. (Compl. ¶ 2). Plaintiff Jeffrey Bishop is a doctor of osteopathic medicine based in West Palm Beach, Florida. (Id. ¶ 3). Plaintiff John Woodyear is a medical doctor who practices in Troy, North Carolina. (Id. ¶ 4). Emery and Bishop each practice medicine and prescribe controlled substances, through Plaintiff Church Ekklasia Sozo ("CES," and together with Emery, Bishop, and Woodyear, the "CES Plaintiffs"), while Woodyear serves as CES's medical director. (Id. ¶¶ 50–54).

CES runs a drug rehabilitation program for patients with opioid dependency. (Id. ¶ 38). CES patients enroll for the program online and must sign certain online forms and view online videos before starting the program. (Id. ¶ 44). The entire program is conducted online. CES's physicians do not meet personally with their patients; they consult with patients remotely through telemedicine. (Id. ¶¶ 41–48). In their practice, CES's physicians prescribe Suboxone, among other medications. (Id. ¶ 40). Suboxone is a Schedule III controlled substance due to its potential for abuse and physiological dependence.

Plaintiffs allege that on July 19, 2019, Plaintiff Doe ("Doe") attempted to fill a prescription for Suboxone written for her by Emery at a CVS Pharmacy store in Rutherfordton,

2

North Carolina. (Id. ¶ 63). There, a CVS pharmacist declined to fill the prescription, stating she did not recognize the prescribing doctor, she believed CES's program was an "internet thing," and she believed the patient had not met personally with the prescribing doctor. (Id. ¶¶ 64–65).

Plaintiffs allege further that unidentified CVS pharmacists at additional, unidentified locations have declined to fill prescriptions for other, unidentified CES patients. (Id. ¶ 80). Plaintiffs specify only one other instance where a CVS pharmacist declined to fill a prescription written by a CES physician. Plaintiffs allege that on or about July 3, 2020, an unnamed patient unsuccessfully attempted to fill a prescription for Suboxone written by Plaintiff Bishop at a CVS Pharmacy in Lithonia, Georgia. (Id. ¶¶ 83–84). Plaintiffs do not attribute any alleged statements to CVS Pharmacy employees made during the interaction.

## II.    STANDARDS OF REVIEW

Here, Defendant CVS Health has moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Furthermore, both Defendants have moved for dismissal for failure to state a claim under Rule 12(b)(6).

Rule 12(b)(2) provides for dismissal for "lack of personal jurisdiction." FED. R. CIV. P. 12(b)(2). Under Rule 12(b)(2), the defendant is required to affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage. Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." Grayson, 816 F.3d at 268 (citing Combs, 886 F.2d at 676). Although the court may consider affidavits

3

submitted by both parties, factual disputes and all reasonable inferences must be made in favor of the party asserting jurisdiction. White v. Aetna Life Ins. Co., No. 3:20-CV-204-MOC-DSC, 2021 WL 467210, at *2 (W.D.N.C. Feb. 9, 2021).

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether

4

the allegations plausibly give rise to an entitlement to relief. Id. at 679.

## III. DISCUSSION

### A. CVS Health's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

As an initial matter, Defendant CVS Health contends that Plaintiffs lack personal jurisdiction over it. For the following reasons, the Court agrees.

There are two types of personal jurisdiction that can be established: general jurisdiction or specific jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8 & 9 (1984). A court may exercise general personal jurisdiction over a defendant when that defendant is essentially "at home" in the forum. See Daimler AG v. Bauman, 571 U.S. 117, 127 (2014). For a corporate (or other entity) defendant, "at home" will usually mean their domicile and their principal place of business. See id. at 137. When general personal jurisdiction does not apply, a court may still exercise specific personal jurisdiction if the plaintiff makes a sufficient showing: (1) the defendant purposefully availed themselves of the forum and the benefits and protections of its laws, (2) the plaintiff's claim arises from the purposefully availing conduct, and (3) the exercise of jurisdiction would be constitutionally reasonable. See Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009). Finally, to exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute, pursuant to Federal Rule of Civil Procedure 4(k)(1)(A); and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003).

CVS Health asserts that this Court cannot assert either general or specific jurisdiction over it in this Court. CVS Health asserts that it is a holding company, with no operations other

than those related to its status as a holding company; it does not provide pharmacy services or dispense medications; it does not provide or offer any product or service or place into the stream of commerce any product or service whatsoever; and it is not authorized to transact business in North Carolina, nor does it have a registered agent in North Carolina. (Moffatt Decl. ¶¶ 4, 5, 7; see also https://www.sosnc.gov/search/index (last visited December 7, 2020)).

In their response to the motion to dismiss, Plaintiffs concede that this Court lacks general jurisdiction over CVS Health. Thus, for CVS Health to remain a party to this litigation, Plaintiffs must show that the Court's exercise of specific personal jurisdiction complies with North Carolina's long-arm statute and comports with Due Process. Plaintiffs contend that specific jurisdiction may be asserted against CVS Health under N.C. GEN. STAT. § 1-75.4(5)(a), which permits the exercise of jurisdiction in an action that "[a]rises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff." Subsection (5)(a), however, does not apply here, as Plaintiffs do not allege that CVS Health made any promise to any Plaintiff to perform or pay for any services to be performed in North Carolina. Plaintiffs rest their assertion of jurisdiction over CVS Health based on its purported support of the "Guardian Angel" program. But "Guardian Angel" is an Aetna program, not CVS Health. See https://cvshealth.com/news-and-insights/press-releases/guardian-angel-opioids-program-reaching-members-at-critical-time (last

accessed January 29, 2021).[1] Even if it were connected to CVS Health, however, any support of

---

[1] Plaintiffs rely on a press release found on the website http://www.cvshealth.com in arguing that CVS Health purposefully availed itself of the forum state of North Carolina. See (FAC at ¶ 105; Pl. Br. Opp. at 8). The cvshealth.com website provides marketing and customer resources information for several subsidiaries of CVS Health and is therefore not limited to information

this program does not permit the exercise of personal jurisdiction in this case under North Carolina's long-arm statute. Plaintiffs have not alleged any "promise" CVS Health allegedly made to the Guardian Angel program (or anyone associated with that program) for Plaintiffs' benefit. See N.C. GEN. STAT. § 1-75.4(5)(a). Plaintiffs likewise have not alleged any such promise that CVS Health would perform services in North Carolina or pay Plaintiffs for their services in North Carolina. Moreover, Plaintiffs' brief in opposition does not identify any such promise to which N.C. GEN. STAT. § 1-75.4(5)(a) applies. Thus, N.C. GEN. STAT. § 1-75.4(5)(a) does not empower this Court to exercise specific personal jurisdiction over CVS Health in this litigation.

Finally, even if Plaintiffs' allegations regarding CVS Health's conduct somehow satisfied N.C. GEN. STAT. § 1-75.4(5)(a), the exercise of specific personal jurisdiction over CVS Health in this case would not comport with the Fourteenth Amendment's Due Process Clause. The Court's specific personal jurisdiction inquiry focuses on the connection between a defendant's activities in the forum state and whether a plaintiff's claims arise out of those contacts. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 713 (4th Cir. 2002). Here, Plaintiffs' claims against CVS Health bear no relationship to CVS Health's alleged support of the Guardian Angel program. Plaintiffs' claims arise out of the refusal of certain CVS Pharmacy employees to fill certain prescriptions for Suboxone. By Plaintiffs' own allegations, that decision had nothing to do with the Guardian Angel program. Given the lack of dealings between CVS Health and

---

relating to CVS Health, the holding company. Indeed, as the website further reflects, Aetna, not CVS, provides financial support to the Guardian Angel program. See https://cvshealth.com/news-and-insights/press-releases/guardian-angel-opioids-programreaching-members-at-critical-time (last accessed January 29, 2021). Regardless, the Guardian Angel program does not relate to the factual basis for Plaintiffs' claims.

Plaintiffs, much less any "significant dealing," this Court does not have specific personal jurisdiction over CVS Health.

In sum, this Court is satisfied that it lacks personal jurisdiction over CVS Health. This Court therefore dismisses Plaintiffs' claims against CVS Health for lack of jurisdiction. Accord Tashjian v. CVS Pharm., Inc., No. CV 19-11164-TSH, 2020 WL 1931859, at *4 (D. Mass. Mar. 13, 2020) (recommending dismissal of CVS Health), adopted by 2020 WL 2048456 (4th Cir. 202 ; Corcoran v. CVS Health Corp., 169 F. Supp. 3d 970, 979–84 (N.D. Cal. 2016) (detailing factual evidence that CVS Health is a holding company without operations and dismissing complaint against CVS Health for lack of jurisdiction as a result); Callum v. CVS Health Corp., 137 F. Supp. 3d 817, 835–37 (D.S.C. 2015) (same).

### B. Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State A Claim

Next, Defendants assert that all of Plaintiffs' claims are subject to dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the Court agrees.

#### 1. Plaintiffs' Claims Under the Title III of the ADA

Plaintiffs assert two claims against CVS under the ADA: (1) Plaintiff Doe's failure to accommodate claim for CVS's alleged refusal to fill her prescription and (2) the CES Plaintiffs' claim for discrimination through association. For the following reasons, Plaintiffs fail to state a cognizable ADA claim under either theory.

#### a. Plaintiff Doe's ADA failure to accommodate claim for CVS's alleged refusal to fill her prescription

The ADA invokes "the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce" and was designed "to provide a clear and

8

comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1), (b)(4). The ADA forbids discrimination against persons with disabilities in three major areas of public life: (1) in employment pursuant to Title I of the statute, Id. at § 12111-12117; (2) by a public entity pursuant to Title II of the statute, Id. at § 12131-12165; and (3) in public accommodations and services provided by a private entity pursuant to Title III of the statute, Id. at § 12181-12189.

The ADA defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of" an individual. Id. at § 12102(1)(A). Also, an individual may be considered to have a disability if the individual is regarded as "having a … impairment." Id. at § 12102(1)(C). An "impairment" exists if the individual "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Id. at § 12102(3)(A). While the ADA expressly excludes an individual "who is currently engaging in the illegal use of drugs" from the term "individual with a disability," Id. at § 12210(a), a person "participating in a supervised rehabilitation program and is no longer engaging in such use" may not be excluded from the term "individual with a disability." Id. at § 12210(b)(2).

Under Title III of the ADA, "Public Accommodations" include, inter alia, "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," Id. at § 12181(7)(E), and no such Public Accommodation may "subject an individual or class of individuals on the basis of a disability … to a denial of the opportunity … [to] benefit from the goods [or] services … of [a private] entity." Id. at § 12182(B)(1)(a)(i). Such discrimination under Title III of the ADA may be by "the imposition or application of eligibility

9

criteria that screen out or tend to screen out an individual with a disability" and prevents the individual with the disability from "fully and equally enjoying any goods [or] services … being offered" or "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods [or] services … to individuals with disabilities." Id. at § 12182(B)(2)(a)(i) & (ii).

In determining whether an impairment substantially limits an individual in a major life activity, the Fourth Circuit construes the statutory text "broadly in favor of expansive coverage," J.D. by Doherty v. Colonial Williamsburg Found., 925 F.3d 663, 670 (4th Cir. 2019), which is consistent with the purpose of the ADA Amendments Act of 2008 ("ADAAA") that was passed to "reinstat[e] a broad scope of protection to be available under the ADA." Summers v. Altarum Inst., Corp., 740 F.3d 325, 329 (4th Cir. 2014) (quoting Pub. L. No. 110–325, § 2(b)(1), 122 Stat. 3553). Additionally, the ADA provides that it is discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association with. 42 U.S.C. § 12182(b)(1)(E).

First, Plaintiffs' ADA claims fail because they seek to require CVS to fill all prescriptions for controlled substances presented to its pharmacists, regardless of the pharmacist's professional judgment. (Compl., ¶¶ 87-88 and ¶¶ 104–105). North Carolina law, however, confers on pharmacists a right to refuse to fill prescriptions in the exercise of their professional judgment. See 21 N.C. Admin. Code 46.1801(a) (pharmacist "shall have a right to refuse to fill or refill a prescription order if doing so would be contrary to his or her professional judgment"); see also U.S. DEA Pharmacist's Manual, EO-DEA 154, 42 (2020) ("A pharmacist is

10

required to exercise sound professional judgment, and to adhere to professional standards, when making a determination about the legitimacy of a controlled substances prescription … The law does not require a pharmacist to dispense a prescription of doubtful, questionable, or suspicious medical legitimacy."). Indeed, federal and state authority identify circumstances when a pharmacist must refuse to fill a prescription. N.C. Admin. Code § 46.1801(b) ("A pharmacist . . . shall not fill or refill a prescription order if, in the exercise of professional judgment, there is or reasonably may be a question regarding the order's accuracy, validity, authenticity, or safety for the patient."); 21 C.F.R. § 1306.04(a) (pharmacists have a "corresponding responsibility" for the proper dispensing of controlled substances and may not knowingly fill a prescription not issued in the usual course of professional treatment).

The ADA does not contradict this law. Nothing in the ADA compels CVS pharmacists to fill prescriptions for controlled substances when it conflicts with their professional judgment and corresponding responsibility. Plaintiffs' interpretation of the ADA would not only read into the statute an obligation that is unsupported by the text, but would also effectively preempt North Carolina's pharmacist law, in violation of the canon of statutory construction disfavoring preemption. See, e.g., Altria Group, Inc. v. Good, 555 U.S. 70, 77–78 (2008). Furthermore, courts have held that a challenge to a reasoned medical judgment with which a patient disagrees is not cognizable under the ADA. See, e.g., Kiman v. New Hampshire Dep't of Corr., 451 F.3d 274, 285 (1st Cir. 2006) (challenge to a "reasoned medical judgment with which the patient disagreed" is not cognizable under ADA); Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions . . . do not ordinarily fall within the scope of the ADA"); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (ADA does not address insufficient treatment).

11

Additionally, Plaintiff Doe lacks standing to assert an ADA claim against Defendant CVS. To demonstrate standing, a plaintiff must show: (1) an "injury in fact" that is concrete and particularized and actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury likely will be redressed by a favorable decision. Nat'l Alliance for Accessibility, Inc. v. NCP Western Blvd. LLC, No. 5:11-CV-357-FL, 2012 WL 3834931, at *2 (E.D.N.C. Sept. 4, 2012). Title III of the ADA, under which Doe brings her claim, provides only for injunctive relief. 42 U.S.C. § 12188; Basta v. Novant Health Inc., No. 3:19-CV-00064-RJCDSC, 2019 WL 3310098, at *3 (W.D.N.C. July 23, 2019). When a plaintiff seeks injunctive relief, the "injury in fact" element requires more than an allegation of defendant's prior wrongful conduct. Nat'l Alliance for Accessibility, Inc., 2012 WL 3834931, at *2. A plaintiff must show a "substantial likelihood of future harm. In other words, to establish standing to pursue injunctive relief . . .. under the ADA, [plaintiff must] demonstrate a real and immediate threat of repeated injury in the future." Id. (internal quotations and citations omitted) (emphasis in original). Thus, to have standing to assert her ADA claim, Doe "must allege that [s]he intends to return to the facility where the alleged injury occurred." Basta, 2019 WL 3310098 at *3.

Doe does not allege any such thing. Doe describes her injury as an "economic injury" and focuses her allegations on CVS's alleged refusal to fill her prescription in the past. (Compl. ¶¶ 83–97). None of Doe's allegations reference future harm, much less a real and immediate threat of repeated future injury. Nor does Doe allege that she intends to return to CVS. In fact, Doe admits that she found "another supplier of the prescriptive medication she needed[.]" (Id. ¶ 97). Since Doe does not allege a substantial likelihood of future harm, she fails to establish jurisdictional standing, and dismissal of her ADA claim is required.

12

Moreover, Doe cannot maintain an ADA claim because she does not allege CVS singled her out for unique treatment. The ADA was enacted "to assure equality of opportunity," 42 U.S.C. § 12101(a)(7), and therefore provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." Id. § 12182(a). As the purpose of the ADA is to combat discrimination based on disability, "there is no discrimination under the [ADA] where disabled individuals are given the same opportunity as everyone else." Doe One v. CVS Pharm., Inc., 348 F. Supp. 3d 967, 987 (N.D. Cal. 2018) (rejecting plaintiffs' argument that would expand the ADA when CVS' restrictions applied equally to all consumers).

Plaintiffs do not allege any facts indicating CVS singled out Doe for disparate treatment. In fact, Plaintiffs' allegations expressly refute any discriminatory motive or action by CVS. Plaintiffs allege that the CVS pharmacist made various statements explaining why she declined to fill Doe's prescription for a controlled substance. (Compl. ¶ 49). None of the stated reasons relate to Doe's purported status as a disabled individual. See, e.g., Zelaya Sorto v. Doe, No. 5:18-CT-3242-FL, 2020 WL 5709249, at *6 (E.D.N.C. Sept. 24, 2020) (dismissing ADA claim where challenged activity was not discriminatory); Knowles v. Lewis, No. 5:11-CT-3113-FL, 2014 WL 1117966, at *12 (E.D.N.C. Mar. 20, 2014) (same). Thus, the Court dismisses Plaintiff Doe's ADA failure to accommodate claim.

### b. CES Plaintiffs' ADA Claim for Discrimination by Association

The CES Plaintiffs' ADA claim for discrimination by association likewise fails as a matter of law. Under the ADA, it is "discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an

13

individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E). To bring a claim for discrimination by association, a plaintiff must allege a specific association with a disabled individual. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 215–16 (4th Cir. 2002). Additionally, this association liability only applies when the defendant discriminates against the plaintiff (here, the CES Plaintiffs) because of his relationship or association with a disabled person (here, Doe). Fonner v. Fairfax Cty., Va., 415 F.3d 325, 333 (4th Cir. 2005).

The Fourth Circuit's opinion in Freilich precludes the CES Plaintiffs' claim. In Freilich, a doctor alleged that she was threatened and intimidated by the defendant hospital and denied equal use of facilities and other opportunities because of her association with patients with disabilities. 313 F.3d at 216. The Fourth Circuit affirmed the district court's dismissal of the doctor's claim, holding that such generalized references to association are not sufficient to state a claim for associational discrimination under the ADA. Id. (reasoning that "[e]very hospital employee can allege at least a loose association with disabled patients" and that "[t]o allow Dr. Freilich to proceed on such a basis would arm every hospital employee with a potential ADA complaint").

Similarly, the CES Plaintiffs' allegations are insufficient to state a claim for discrimination by association. They only generically refer to having "an association with Plaintiff Doe and all other patients participating in and being treated by" the CES Plaintiffs. (Compl. ¶ 103). The CES Plaintiffs have, at most, precisely the type of "loose association" with a disabled patient that the Freilich court found was insufficient. The CES Plaintiffs' associational discrimination claim also fails because their own allegations refute any suggestion that CVS discriminated against the CES Plaintiffs due to their association with Doe. Specifically, Plaintiffs

14

allege that the CVS pharmacist explained she was declining to fill Doe's prescription for Suboxone, not because of the CES Plaintiffs' association with Doe, but because she did not recognize the prescribing doctor and she had concerns about the CES practice. (Compl. ¶¶ 47–49). These allegations simply do not support a discrimination by association claim.[2] Thus, this claim is dismissed.

### 2. Plaintiffs' Claims under Section 504 of the Rehabilitation Act of 1973

Section 504 of the Rehabilitation Act of 1973 proscribes any qualified individual with a disability from being excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a). Under the Rehabilitation Act of 1973, a program or activity is defined to include the operations of an entire corporation that is principally engaged in the business of providing health care to which Federal financial assistance is provided. Id. at § 794(b)(3)(A) & (B). Drawing from section 12102 of title 42, a disability is defined in the same way as in the ADA. Id. at § 705(20). Furthermore, as in the ADA, a person "participating in a supervised rehabilitation program and is no longer engaging in" the illegal use of drugs may not be excluded from the term "individual with a disability" under the Rehabilitation Act of 1973. Id. at § 705(20)(C)(ii)(II).

To establish a prima facie case under the Rehabilitation Act, a plaintiff must show that: (1) she has a disability; (2) she was "otherwise qualified" for the benefit in question; and (3) that she has been denied the benefit due to discrimination "solely on the basis" of her disability. 29

---

[2]  As Defendant CVS notes, indeed, since CVS routinely fills prescriptions for patients who suffer various forms of disability, accepting the CES Plaintiffs' theory of associational discrimination would render CVS potentially liable for every time it declines to fill a prescription, which is precisely what 21 C.F.R. § 1306.04(a) and 21 N.C. Admin. Code 46.1801(a) forbid.

15

U.S.C. § 794(a). The purpose of the Rehabilitation Act is to provide "disabled persons legal rights regarding access to programs and activities enjoyed by all, not a general federal cause of action for challenging the medical treatment of their underlying disabilities." Mathis v. GEO Grp. Inc., No. 2:08-CT-21-D, 2009 WL 10736631, at *14 (E.D.N.C. Nov. 9, 2009) (dismissing plaintiff's claim under the Rehabilitation Act for denial of physical therapy) (internal quotations and citation omitted). Accordingly, plaintiffs may not prevail for a claim under the Rehabilitation Act for inadequate medical care. Id. (citing Fitzgerald v. Corrs. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) and Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)).

Here, Plaintiff Doe's claim under the Rehabilitation Act fails for two independent reasons. First, Doe does not allege any facts indicating that she is "otherwise qualified" for the benefit at issue. Doe alleges that she is an "individual with a disability" within the meaning of the Rehabilitation Act on account of her opioid dependency. (Compl. ¶ 129). She then alleges that she was denied the benefit of receiving prescription opioid medication (specifically, Suboxone) on account of her disability. (Id. ¶¶ 132–33). The problem with Doe's claim is that she was only able to receive Suboxone due to her alleged disability (i.e., her opioid dependency). See (Compl. ¶¶ 57–61). That is, Doe was not "otherwise qualified" to receive Suboxone, independent from her alleged opioid dependency disability.

Courts under these circumstances have rejected Rehabilitation Act claims identical to Plaintiff Doe's theory. See, e.g., Cushing v. Moore, 970 F.2d 1103, 1108–09 (2d Cir. 1992) (affirming dismissal of claim brought by outpatients at rehabilitation clinic who brought claims for violation of the Rehabilitation Act premised on termination of methadone treatment, holding that plaintiffs could not demonstrate that they were "otherwise qualified" and explaining the "[R]ehabilitation Act does not create a cause of action based on a handicap that is directly related

16

to providing the very services at issue"); <u>Mascetti v. Zozulin</u>, No. 3:09-cv-963(PCD), 2010 WL 1644572, at *3 (D. Conn. Apr. 20, 2010) (dismissing Rehabilitation Act claim brought against defendant pharmacy for alleged refusal to dispense pain medication to plaintiff, finding that plaintiff was not "otherwise qualified" and holding "Section 504 does not apply if an individual only qualifies for a benefit or service because of her disability"); <u>see also</u> <u>Mathis</u>, 2009 WL 10736631, at *14 (dismissing plaintiff's claim under the Rehabilitation Act for denial of physical therapy and explaining that a plaintiff "may not receive relief under the Rehabilitation Act for inadequate medical care").

Doe's Rehabilitation Act claim fails for a second reason. That is, she admits she was not denied a benefit "solely on the basis" of her disability. <u>See</u> <u>Halpern v. Wake Forest Univ. Health Scis.</u>, 669 F.3d 454, 461 (4th Cir. 2012). "Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is substantially the same." <u>Smith v. North Carolina Dep't of Safety</u>, No. 1:18CV914, 2019 WL 3798457, at *2 (M.D.N.C. Aug. 13, 2019). The two statutes, however, differ "with respect to the third element, causation. To succeed on a claim under the Rehabilitation Act, the plaintiff must establish that he was excluded 'solely by reason of' his disability; the ADA requires only that the disability was a "motivating cause" of the exclusion." <u>Halpern</u>, 669 F.3d at 461–62 (citing <u>Baird ex rel. Baird v. Rose</u>, 192 F.3d 462, 468–69 (4th Cir. 1999)). As discussed above, Doe cannot meet the ADA's causation threshold, let alone the more exacting standard of the Rehabilitation Act. Plaintiffs' allegations expressly refute any discriminatory motive or action by CVS by identifying the stated reasons why an unidentified CVS employee allegedly refused to fill Doe's prescription for Suboxone, and none of those reasons relate to Doe's alleged disability status. <u>See</u> (Compl. ¶ 65). Accordingly, Plaintiff Doe's Rehabilitation Act claim is dismissed.

**3. Plaintiff's Claim under Section 1557 of the Patient Protection and Affordable Care Act ("ACA")**

Section 1557 of the ACA was established to prevent healthcare discrimination by any health program, healthcare entity, or activity that receives federal funding pursuant to 29 U.S.C. § 794. 42 U.S.C. § 18116(a). The ACA makes it illegal to discriminate against individuals based on, among other things, their disability. Section 1557 expressly extends its discrimination prohibition to entities that receive federal financial assistance in the form of credits, subsidies, or contracts of insurance, or any program or activity administered by an executive agency, including federal health programs like Medicaid, Medicare, and Children's Health Insurance Program ("CHiP"). Id.

In the legislation identifying grants to states for medical assistance programs, a "Retail Community Pharmacy" is defined an independent pharmacy, a chain pharmacy, a supermarket pharmacy, or a mass merchandiser pharmacy that is licensed as a pharmacy by the State and that dispenses medications to the general public at retail prices. 42 U.S.C. § 1396r–8(k)(10). Through the effectuation of Title VI of the Civil Rights Act of 1965, programs receiving federal assistance through the Department of Health and Human Services are expressly forbidden from providing "any service, financial aid, or other benefit to an individual which is different, or is provided in a different manner, from that provided to others under the program." 45 C.F.R. § 80.3(a)(ii).

"Section 1557 does not create new bases of prohibited discrimination, but rather incorporates the grounds of four longstanding federal nondiscrimination statutes: Title VI, Title IX, the ADA, and Section 504. 42 U.S.C. § 18116(a). The implementing Rule claims to merely 'clarif[y] and codif[y] existing nondiscrimination requirements' incorporated in Section 1557." Franciscan Alliance, Inc. v. Burwell, 227 F. Supp. 3d 660, 671 (N.D. Tex. 2016) (emphasis in

18

original) (quoting 81 Fed. Reg. at 31376). Accordingly, where, as here, a plaintiff's Rehabilitation Act claim fails, her claim arising under the ACA must fail as a matter of law as well. Basta, 2019 WL 3310098, at *6 (stating that because plaintiff did not state a claim under the Rehabilitation Act, "it is not necessary to determine the applicability of the ACA"); Hawkins v. Cohen, 327 F.R.D. 64, 75–76 (E.D.N.C. 2018). Thus, Plaintiffs' ACA claim is dismissed.

**4. Plaintiffs' Claim Alleging a Violation under Section 43(a) of the Lanham Act**

Section 43(a) of the Lanham Act proscribes "on or in connection with any goods or services" used in commerce any "false or misleading description of fact, or false or misleading representation of fact, which … in commercial advertising or promotion, misrepresents the nature, characteristics, qualities … of his or her … goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1). In the event such person does violate this provision, they "shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." Id. Courts construe "false or misleading" to include a representation that is "literally false" or that is "literally true but nevertheless misleading." In re GNC Corp., 789 F.3d 505, 514 (4th Cir. 2015).

Evidence of actual consumer confusion provides the necessary showing that a representation is misleading. Additionally, any representation must be material—i.e., a material misleading representation is one that is likely to influence a purchasing decision. Verisign, Inc. v. XYZ.com LLC, 848 F.3d 292, 298 (4th Cir. 2017). Such a misleading statement must have actually deceived, and such actual deception caused the person being deceived to have been or likely to be injured as a result of the misleading representation. Id.

To state an actionable claim under Section 43(a), Plaintiffs must establish each of the following five elements:

19

(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

Verisign, 848 F.3d at 298–99 (quoting Design Res., Inc. v. Leather Indus. of Am., 789 F.3d 495, 501 (4th Cir. 2015)).

The Supreme Court has established a two-part test to determine whether a plaintiff has statutory standing to pursue a claim under Section 43(a) of the Lanham Act. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014). First, the plaintiff must "fall within the zone of interests protected by the law invoked." Id. at 129 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). For purposes of a plaintiff pursuing a false advertising claim under the Lanham Act, the "plaintiff must allege an injury to a commercial interest in reputation or sales." Id. at 131–32. Second, the plaintiff must allege injuries that were proximately caused by violations of the subject statute. Id. at 132. A plaintiff asserting a claim for false advertising under Section 43(a) thus "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." Id. at 133.

Here, Plaintiff Doe lacks statutory standing to pursue a claim under the Lanham Act, as she has not alleged any "injury to a commercial interest in reputation or sales." Id. at 131–32. Consumers such as Doe do not fall within the zone of interests protected by Section 43(a) and therefore cannot pursue a false advertising claim under the Lanham Act. Id. at 132 ("A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact

20

cognizable under Article III, but he cannot invoke the protection of the Lanham Act"); Made in the USA Found. v. Phillips Foods, Inc., 365 F.3d 278, 281 (4th Cir. 2004) (same).

The CES Plaintiffs likewise lack statutory standing, as their allegations cannot support any finding that they suffered an injury proximately caused by an alleged violation of the Lanham Act. Plaintiffs' FAC does not allege that the CES Plaintiffs lost a single patient or otherwise suffered a single dollar in economic harm, let alone any allegations connecting any such damage to statements attributed to CVS. Absent such allegations, Plaintiffs' Lanham Act claim fails as a matter of law. See, e.g., Wall & Assocs. Inc. v. Better Bus. Bureau of Cent. Va., Inc., 685 F. App'x 277, 279 (4th Cir. 2017). Thus, the Lanham Act claim must be dismissed for this reason alone.

In any event, even if Plaintiffs had statutory standing to pursue their Lanham Act claim against CVS, Plaintiffs fail to state a claim for a violation of the Lanham Act. First, Plaintiffs have not alleged any false or misleading statement by CVS or its physicians forming the basis of their Lanham Act claims. Instead, Plaintiffs base their Lanham Act claim on two press releases published to the CVSHealth.com website concerning CVS's collaboration with the "Guardian Angel" social work program launched by Aetna. See (Compl. ¶¶ 105–10). As detailed in the press releases relied on by Plaintiffs, CVS's collaboration in the Guardian Angel program helps individuals with opioid dependency located in certain communities in North Carolina, New Orleans, and Tampa access social services to obtain assistance with transportation, food assistance and meal delivery, adult day care, employment services, and housing support, among other services. See (Pl. Exs. A & B). Citing these press releases, Plaintiffs assert that "Defendant CVS Health recognizes that opioid overdose victims must be subjected to treatment" and that "opioid use disorders must be addressed through treatment centers." (Compl. ¶¶ 105–06).

21

Plaintiffs do not identify any statements in the press releases that they believe are false or misleading, let alone allege any facts demonstrating the falsity of any such statement. Plaintiffs seem to suggest that CVS's participation in the Guardian Angel program is somehow inconsistent with the decision not to fill a prescription for Suboxone written by the CES Plaintiffs. The press releases, however, do not promise that CVS would fill every prescription for Suboxone (or any other controlled substance) presented to its pharmacists, regardless of the circumstances. In sum, because Plaintiffs have not identified any purportedly false or misleading statement by CVS, their Lanham Act claim fails.

Plaintiffs' Lanham Act claim also fails because they have not identified any false or misleading statement that was material. To qualify as a "material" misrepresentation giving rise to a Lanham Act claim, Plaintiffs must show that the statement at issue would affect a consumer's purchasing decision. See, e.g., Design Res., Inc., 789 F.3d at 501; PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 120 (4th Cir. 2011). Plaintiffs have not alleged any statements by CVS that would be material to a consumer in deciding whether to receive treatment from CES or its affiliated physicians.

Finally, Plaintiffs have not alleged any facts demonstrating that they injured as a result of the purported misrepresentations on which they base their Lanham Act claims. Accordingly, Plaintiffs' Lanham Act claim must fail on this basis as well.

In sum, Plaintiffs lack standing to bring a Lanham Act violation claim, and they also fail to state a claim for a violation of the Lanham Act. Thus, this claim is dismissed.

**5.    Plaintiffs' Claims for Tortious Interference with Contact and Tortious Interference with A Prospective Economic Relationship**

To state an actionable claim for tortious interference with contract, Plaintiffs must plead

22

(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff. Braswell v. Haywood Reg'l Med. Ctr., 352 F. Supp. 2d 639, 652 (W.D.N.C. 2005). Similarly, to plead an actionable claim for tortious interference with prospective economic advantage, Plaintiffs must plead (1) the existence of a business relationship between Plaintiffs and a third party; (2) CVS interfered with that relationship; (3) by maliciously inducing the third party not to enter into a contract with Plaintiffs; (4) that the third party would have entered into but for CVS's conduct; and (5) CVS's conduct was not a legitimate exercise of its rights. Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC, 368 N.C. 693, 701 (2016).

Plaintiffs allege that CVS committed tortious interference in two ways: (1) by refusing to fill controlled substances prescriptions and (2) through making allegedly defamatory statements. (Compl. ¶¶ 181–83, 187–88). First, as a matter of law, CVS's refusal to fill prescriptions cannot be the basis of Plaintiffs' interference claims. As noted, North Carolina law is clear that a pharmacist "shall have the right to refuse to fill or refill a prescription order if doing so would be contrary to his or her professional judgment." 21 N.C. Admin. Code § 46.1801(a). Federal law likewise provides that a pharmacist has a "corresponding responsibility" not to knowingly fill prescriptions issued outside the usual course of professional treatment. 21 C.F.R. § 1306.04(a).

To prevail on their tortious interference claims, Plaintiffs must plead and prove that CVS acted "without justification" and that CVS pharmacists' exercise of their professional judgment "was not a legitimate exercise of its rights." Braswell, 352 F. Supp. 2d at 652. A person acts "without justification" only "if he has no sufficient lawful reason for his conduct." MLC Auto.,

23

LLC v. Town of S. Pines, 207 N.C. App. 555, 571 (2010) (citation omitted). To satisfy this element, Plaintiffs must show that CVS was "acting not in the legitimate exercise of [his] own right, but with a design to injure the plaintiff or gain some advantage at his expense." Id. (internal quotation and citation omitted). Plaintiffs have not even attempted to satisfy these requirements.

Second, Plaintiffs have wholly failed to allege the facts necessary to support a claim for tortious interference with contract, whether based on the alleged refusal to fill Plaintiffs' prescriptions or on CVS's alleged defamatory remarks. Specifically, Plaintiffs fail to allege that any actual or specific contracts existed between themselves and any actual or specific patients or that CVS knew such contracts existed. At most, Plaintiffs allege that certain unnamed "registrants" to CES's online platform entered into a narcotics agreement and an informed consent agreement as part of their participation in the online treatment. (Compl. ¶ 44). But Plaintiffs do not provide any specifics. They do not allege whether any of the unnamed contracted with Plaintiffs, whether each Plaintiff was a party to such contracts, whether these contracts were at-will or for specified durations, or what services or goods were to be provided pursuant to these contracts. Plaintiffs also do not attach copies of any such contracts to the Complaint. See Williams v. Popular Mortg. Servs., Inc., No. 4:10-CV-0020-F, 2011 WL 2678817, at *4–5 (E.D.N.C. June 30, 2011) (dismissing plaintiffs' claim for tortious interference with contract where plaintiffs did not attach a copy of the purported contract to their complaint); see also Krawiec v. Manly, 370 N.C. 602, 606–08 (2018) (tortious interference claim fails where no allegation defendant was aware of contract). Plaintiffs' Complaint also does not allege that any contract was breached, nor does it allege that CVS intended to induce such a breach. Bowman v. Reid, No. 5:14CV179-RLV, 2015 WL 4508648, at *6 (W.D.N.C. July 24, 2015),

24

aff'd, 646 Fed. App'x 318 (4th Cir. 2016) (dismissing tortious interference claim where contract did not allege a contract with third party that defendants had induced to breach). Plaintiffs do not allege, for example, that any patient whose prescription was not filled, or any recipient of the allegedly defamatory statements, terminated his or her contract with Plaintiffs.[3] Nor do Plaintiffs allege sufficient facts to establish that terminating a contract under these circumstances would constitute breach of a contract with Plaintiffs. Without these essential allegations, Plaintiffs' tortious interference with contract claim fails. See Phelps Staffing, LLC v. C.T. Phelps, Inc., 226 N.C. App. 506, 512 (2013). Thus, this claim is dismissed.

For similar reasons, Plaintiffs have also failed to sufficiently allege a claim for tortious interference with a prospective economic relationship. Plaintiffs have not adequately alleged (1) the existence of any relationship; (2) that CVS was aware of such relationship; (3) CVS's intentional interference with that relationship; or (4) the absence of justification for CVS's alleged actions. Each of these failures independently mandates dismissal of Plaintiffs' tortious interference with prospective economic relationship claim. Moreover, to state a claim for tortious interference with a prospective economic relationship, Plaintiffs must show that CVS's actions caused a third party not to enter into a contract with Plaintiffs, which that party would have entered into but for CVS's conduct. Beverage Sys., 368 N.C. at 701. Plaintiffs do not identify a single potential patient that Plaintiffs lost due to CVS's conduct. Plaintiffs' claim for tortious interference with a prospective economic relationship is therefore dismissed.

### 6. Plaintiffs' Claim for Unfair and Deceptive Trade Practices

---

[3] For this same reason, Plaintiffs also fail to satisfy the requisite damages element for their tortious interference claim.

The North Carolina UDTPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. GEN. STAT. § 75.1-1(a). To state a claim under the UDTPA, Plaintiffs must plead: (1) CVS committed an unfair or deceptive act; (2) this act was in or affecting commerce; and (3) the act proximately caused Plaintiffs' injury. Radchyshyn v. Allstate Indem. Co., No. 1:14-cv-00169 MR-DLH, 2014 WL 4406994, at *3 (W.D.N.C. Sept. 8, 2014).

Plaintiffs allege that CVS violated the UDTPA through the following actions: refusing to fill prescriptions (Compl. ¶¶ 209-214); telling patients that Plaintiff CES's drug rehabilitation program, conducted through telemedicine, is not a valid treatment program (Compl. ¶ 213); and making purportedly defamatory statements about Plaintiff Dr. Emery (Compl. ¶ 214). Plaintiffs fails to state a UDTPA claim against Defendant for several reasons. First, pharmacists are learned professionals whose services are exempted from the UDTPA. Each allegation in CES's and Emery's UDTPA claim is premised on actions by a CVS pharmacist. (See Compl., ¶¶ 207–14). However, because the UDPTA does not include "professional services rendered by a member of a learned profession," it does not extend to actions by a CVS pharmacist. See N.C. GEN. STAT. § 75-1.1(b). The "learned profession" exclusion applies if: (1) the person or entity performing the alleged act is a member of a learned profession; and (2) the conduct in question is a rendering of professional services. Wheeless v. Maria Parham Med. Ctr., Inc., 237 N.C. App. 584, 589 (2014). The CVS pharmacist satisfies the first prong of this test because she is a licensed health care professional. North Carolina courts have "long held that members of health care professions fall within the learned profession exemption to [the UDPTA], and this exception for medical professionals has been broadly interpreted." Sykes v. Health Network Solutions, Inc., 372 N.C. 326, 334 (2019) (internal quotations omitted) (licensed chiropractors are members

26

of a learned profession).

The CVS pharmacist also satisfies the second prong of the learned profession test because each of Plaintiffs' allegations—refusing to fill prescriptions, discussing the drug rehabilitation program, and speaking with customers about Dr. Emery—is conduct connected to the pharmacist's provision of medical services. See Wheeless, 237 N.C. App. at 589 (where the plaintiff doctor complained that his colleagues had corresponded with the medical board about his professional conduct, affirming dismissal and stating that the North Carolina courts have "made clear that unfair and deceptive acts committed by medical professionals are not included within the prohibition of [the UDPTA]").

Next, Plaintiffs fail to state a claim for violation of the UDTPA because Plaintiffs do not allege any unfair or deceptive acts within the meaning of the UDPTA. The UDTPA declares as "unlawful" all "[u]nfair methods of competition in or affecting commerce" or "unfair or deceptive acts or practices in or affecting commerce." N.C. GEN. STAT. § 75-1.1(a). To show that CVS's conduct violates the UDTPA, Plaintiffs must show that it "offends established public policy"; is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers"; or has a tendency to deceive. See Champion Pro Consulting Grp., LLC v. Impact Sports Football, LLC, 116 F. Supp. 3d 644, 652 (M.D.N.C. 2015). The UDTPA is intended "to provide a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within this State, and it applies to dealings between buyers and sellers at all levels of commerce." In re Brokers, Inc., 396 B.R. 146, 160 (Bankr. M.D.N.C. 2008) (quoting Bhatti v. Buckland, 328 N.C. 240, 245 (1991)). "[T]he fundamental purpose of [the UDTPA] is to protect the consuming public." Id. at 162.

Here, CES and Dr. Emery cannot assert a claim under the UDTPA because CES and

27

Emery have no business dealings with CVS. North Carolina courts have recognized repeatedly that an established business relationship between the parties is a critical factor in applying the UDTPA. Champion, 116 F. Supp. 3d at 661 (UDTPA does not apply because no business relationship existed between parties); Pleasant Valley Promenade v. Lechmere, Inc., 120 N.C. App. 650, 658 (1995) (same). This is so because the UDTPA is intended "to maintain ethical standards of dealings between persons engaged in business . . . ." In re Brokers, Inc., 396 B.R. at 160. Plaintiffs have not alleged the type of business relationship between CVS on the one hand, and CES and Dr. Emery on the other, that the UDTPA was designed to protect. Moreover, Plaintiffs have also not alleged any activity by CVS that is deceptive, or otherwise "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Champion, 116 F. Supp. 3d at 652. In sum, Plaintiffs have failed to state a cognizable UDTPA claim. Thus, this claim is dismissed.

### 7. Plaintiffs' Defamation Claims

To recover for defamation, Plaintiffs must allege that CVS "caused injury to [Plaintiffs] by making false, defamatory statements of or concerning [Plaintiffs], which were published to a third person." Craven v. COPE, 188 N.C. App. 814, 816 (2008). To constitute defamation, the alleged statement must be "injurious to the reputation of the plaintiffs." Tyson v. L'Eggs Prods., Inc., 84 N.C. App. 1, 12 (1987). Likewise, "expressions of opinion not asserting provable facts are protected speech" and cannot give rise to a claim for defamation. Squitieri v. Piedmont Airlines, Inc., No. 3:17CV441, 2018 WL 934829, at *4 (W.D.N.C. Feb. 16, 2018) ("statements that cannot be proven as verifiably true or false are non-actionable opinion").

North Carolina retains two distinct defamation torts: the tort of libel encompasses written publications that include purportedly defamatory statements, while slander refers to oral

statements. Esancy v. Quinn, No. 5:05cv26, 2006 WL 322607, at *3 (W.D.N.C. Feb. 10, 2006).

Plaintiffs' allegations are limited to alleged oral remarks, so their claims are properly viewed as

asserting slander. Plaintiffs assert causes of action for slander per se and slander per quod.

Slander per se is a false oral communication that amounts to (1) an accusation that the plaintiff

committed a crime involving moral turpitude, (2) an allegation that impeaches the plaintiff in his

trade, business, or profession, or (3) an imputation that the plaintiff has a loathsome disease.

Barker v. Kimberly-Clark Corp., 136 N.C. App. 455, 459 (2000). In either case, a prima facie

presumption of malice and a conclusive presumption of damage arises, obviating the need for the

plaintiff to plead and prove special damages. Id. at 460.

When the defamatory character of the words does not appear on their face, but only in

connection with extrinsic, explanatory facts, they are only actionable as slander per quod.

Badame v. Lampke, 242 N.C. 755, 757 (1955). In this latter scenario, Plaintiffs must plead and

prove special damage. Id. For the following reasons, Plaintiffs do not state a cognizable claim

against Defendant for either per se or per quod defamation.

First, Plaintiffs have not pled their claims for defamation with the necessary details to

allow CVS to adequately defend against Plaintiffs' allegations. While Plaintiffs are not required

to set forth the allegedly defamatory statement in their Complaint verbatim, "the words attributed

to [CVS] must be alleged 'substantially' in haec verba, or with sufficient particularity to enable

the court to determine whether the statement was defamatory." Mbadiwe v. Union Mem'l Reg'l

Med. Ctr., Inc., No. 3:05CV49-MU, 2005 WL 3186949, at *4 (W.D.N.C. Nov. 28, 2005); see

also Bowman, 2015 WL 4508648, at *7 (same). Specifically, Plaintiffs must identify the time

and place of each alleged defamatory statement to comply with their pleading obligations.

Orndorff v. Raley, No. 3:17-CV-00618-GCM, 2018 WL 5284040, at *3 (W.D.N.C. Oct. 24,

29

2018) (dismissing defamation claims for lack of specificity); <u>Bowman</u>, 2015 WL 4508648, at *6

(same); <u>Mbadiwe</u>, 2005 WL 3186949, at *4 (same). In support of their defamation claim,

Plaintiffs allege the following:

> Various statements made by Defendant CVS Health's and Defendant CVS Pharmacy's agents, servants, employees and/or representatives over the course of dealing with Plaintiff Church Ekklasia Sozo's, Dr. Emery's and/or Dr. Bishop's patients are false, and upon information and belief, include, to wit:
>     a. Doctor is under investigation by the FDA, DEA, medical board or any other government or organizational body;
>     b. Doctor's medical license has been revoked or restricted by an oversight or regulatory body;
>     c. Doctor is a drug dealer;
>     d. Doctor is writing too many prescriptions;
>     e. Supervised Drug Rehabilitation Program is not a legitimate treatment program; and
>     f. Supervised Drug Rehabilitation Program cannot be a telemedicine program.

(Compl. ¶ 101).

These allegations fall far short of the detail required to survive dismissal. Plaintiffs do not

identify the speaker of any alleged statement, the recipient of any alleged statement, the alleged

person about whom each statement was made, when the statement was made, where it was made,

or any other details providing context for the alleged statements.[4] <u>Accord</u> <u>Orndorff</u>, 2018 WL

5284040, at *3 (dismissing the plaintiffs' defamation claims, explaining that the "fragmented

quotes" set forth in the complaint failed "to allege who made each statement, "to provide any

context for each statement," and therefore did not "allege sufficient facts to make the claim for

---

[4] As Defendant notes, Plaintiffs' failure to provide this detail is particularly critical in light of North Carolina's one-year statute of limitations for defamation. <u>See</u> N.C. GEN. STAT. § 1-54. Thus, to the extent any of the alleged statements upon which Plaintiffs rely occurred on or before July 13, 2019, they are barred by the statute of limitations.

defamation anything more than mere speculation on the part of the Court"); see also Bowman, 2015 WL 4508648, at *7 (dismissing defamation claim where plaintiffs alleged that defendants made defamatory statements to plaintiffs' "friends, acquaintances, and business associates throughout North Carolina," reasoning that "[t]hese are generalized claims that could mean just about anybody" and that there was "no indication in the Plaintiffs' Complaint as to where this alleged defamation occurred, and only a vague indication as to the content of the defamation"); Esancy, 2006 WL 322607, at *5 (dismissing defamation claims where plaintiff "does not allege the specific individuals to whom the alleged defamatory statements were made, nor does he allege the time or place of the defamatory communications").

Beyond the allegations in Paragraph 101 discussed above, the only other purported defamatory statements alleged in the Complaint are set forth in Paragraph 65. Specifically, Plaintiffs allege that on July 19, 2019, when a CVS pharmacist at the Rutherfordton CVS Pharmacy location declined to fill the prescription for Suboxone written by Dr. Emery, the pharmacist explained that she was declining to fill the prescription because (1) "she did not recognize the doctor who prescribed the Suboxone," (2) "the program for prescribing the Suboxone was an 'internet thing,'" and (3) Doe did not "go[] in to see a doctor or have any consultation with a doctor prior to receiving this prescription." (Compl. ¶ 65).

Defendant contends that these statements cannot support a cause of action for defamation, as they are all true. The Court agrees that, according to the pleadings, these statements are true. The first alleged statement—that the unnamed pharmacist "did not recognize the doctor who prescribed the Suboxone"—was presumably true (and Plaintiffs have not alleged facts indicating otherwise). Even if false, this alleged statement would not injure Dr. Emery's reputation. Tyson, 84 N.C. App. at 12 (defamation fails where statement is "not of such nature

31

that the court can presume as a matter of law that it is injurious to the reputation of the plaintiffs").

Defendant further contends that the second alleged statement—that Doe received her prescription through a program that was an "internet thing"—is also true. Indeed, Plaintiffs' own allegations confirm the truth of this alleged statement. Plaintiffs' Complaint details that CES patients register for the program online, watch videos online, and attend meetings online. (Compl. ¶¶ 44–49). Moreover, even if false, the statement would not cause any injury to Dr. Emery's reputation certainly cannot support a claim for defamation per se. See Jackson v. Mecklenburg Cnty., No. 3:07-cv-218, 2008 WL 2982468, at *5 (W.D.N.C. July 30, 2008) (to qualify as defamation per se, the statement must be injurious to the plaintiff's reputation even when "stripped of all insinuations, innuendo, colloquium and explanatory circumstances") (citation omitted).

Finally, the third alleged statement—that the patient did not "go[] in to see a doctor" in person to obtain the prescription—was likewise true. Plaintiffs' own allegation again confirm the truth of this alleged statement. Plaintiffs acknowledge that CES conducts telemedicine, which does not include in-person meetings between physician and patient. (Compl. ¶¶ 38–50). Patients sign up for the program online and conduct all meetings online. (Id. ¶¶ 44–48). Indeed, patients need not even meet with physicians through livestream video: "If a patient is unable to attend the live meeting . . . the meetings are recorded and available to watch online, which the patient must do if he or she misses the live, online meeting." (Id. ¶ 48). Thus, Defendant contends that, rather than allege facts demonstrating the falsity of the purportedly defamatory statements at issue, Plaintiffs' Complaint confirms that the statements alleged in Paragraph 65 are true. Thus, Plaintiffs have not alleged a claim for defamation based on these statements.

Defendant CVS contends, and the Court agrees, that even if Plaintiffs had adequately pled the elements of their defamation claims, and even if the alleged statements attributed to CVS were false and defamatory, Plaintiffs' defamation claims still fail because a qualified privilege protects the alleged statements. North Carolina law is clear that "when an otherwise defamatory communication is made in furtherance of a political, judicial, social, or personal duty, the declarant is entitled to a qualified privilege unless actual malice is shown." Kling v. Harris Teeter Inc., 338 F. Supp. 2d 667, 673 (W.D.N.C. 2002); see also Dobson v. Harris, 352 N.C. 77, 86 (2000). Once a defendant establishes that the communication at issue is subject to a qualified privilege, the burden shifts to plaintiffs to show that the privilege was abused. Harris v. Procter & Gamble Mfg. Co., 102 N.C. App. 329, 332 (1991).

In North Carolina, both statutory and common law mandate that pharmacists owe a duty of care to patients and the public. State statute recognizes that: "The General Assembly of North Carolina finds that mandatory licensure of all who engage in the practice of pharmacy is necessary to [e]nsure minimum standards of competency and to protect the public from those who might otherwise present a danger to the public health, safety and welfare." N.C. GEN. STAT. § 90-85.2. Additionally, North Carolina courts have recognized that pharmacists owe a "duty to act with due, ordinary, care and diligence in compounding and selling drugs." Batiste v. Am. Home Prods. Corp., 32 N.C. App. 1, 8 (1977); see also Ferguson v. Williams, 92 N.C. App. 336, 339–40 (1988). For these reasons, courts have recognized that a qualified privilege applies to statements made by a pharmacy or pharmacist to a patient regarding their prescribing doctor, his or her qualifications, the prescriptions involved, or other such issues. See, e.g., Lefrock v. Walgreens Co., 77 F. Supp. 3d 1199, 1201–02 (M.D. Fla. 2015) (qualified privilege found to attach as a matter of law where statements "were made by a Walgreens' pharmacist to pharmacy

33

customers at the time the customers attempted to fill prescriptions, and the apparent purpose of the statements was to inform the customers about the physician who wrote the prescription"); see also DeBinder v. Albertson's, Inc., 2008 WL 828775, at **3, 8 (D. Ariz. Mar. 26, 2008) (applying qualified privilege to communication between pharmacist-technician and physician's office manager regarding problems physician's office had with fraudulent prescriptions and plaintiff patient's pattern of "calling in prescriptions all over town").

Although North Carolina courts have not addressed the matter directly, they have recognized that a qualified privilege exists as to statements made by medical professionals relating to the treatment of patients. See Brodkin v. Novant Health, Inc., 264 N.C. App. 6, 15 (2019). Such statements are protected because ensuring that a physician's patients "receive the appropriate medical treatment is unquestionably an important interest for all parties" to the physician-patient relationship. Id. This same rationale applies with full force to the statements alleged in Plaintiffs' Complaint. CVS plainly shares a relationship, legal duty, and common interest with its customers.

Specifically, both CVS and its customers share an interest in issues related to the customers' care and treatment, including their prescriptions (particularly for controlled substances), the associated prescriber (such as Dr. Emery), and the prescriber's prescribing practices—including whether the prescriber personally met with his patients to ensure that controlled substances were not subject to abuse. Therefore, both CVS and its customers shared a common interest in the physician who prescribed controlled substances, and any statements CVS made are subject to qualified privilege as a matter of law. See Brodkin, 264 N.C. App. 6, 14–15 (explaining that qualified privilege applied to protect "a good faith disagreement with a fellow cancer doctor about the appropriate course of treatment during a meeting designed to encourage

34

honest debate"); <u>LeFrock</u>, 77 F. Supp. 3d at 1201 (allegedly defamatory statements by pharmacist to patient were protected by qualified privilege because the "apparent purpose of the statements was to inform the customers about the physician who wrote the prescription").

Because a qualified privilege attached to the alleged defamatory remarks, Plaintiffs must overcome the privilege at the motion to dismiss stage by pleading facts demonstrating an abuse of the privilege. A plaintiff can show that a qualified privilege was abused by pleading and proving that the defendant excessively published the purportedly defamatory statement or acted with actual malice in making the alleged statement. <u>Alpar v. Weyerhaeuser Co.</u>, 20 N.C. App. 340, 346 (1974). Plaintiffs have not sufficiently alleged either of these potential abuses.

First, nothing in the Complaint indicates there was excessive publication of the alleged defamatory remarks. Indeed, the Complaint does not even suggest how many times the remarks were made, to how many persons, and in what fashion, or whether anyone outside of the alleged recipients (who were attempting to fill the specific prescriptions involved) heard the remarks. Instead, at most, the purported defamatory statements are alleged to have been made directly and only to the person for whom such statements were entirely appropriate—the patient presenting the prescription for a controlled substance. (<u>See</u> Compl. ¶ 65).

Second, Plaintiffs have not pled any facts in the Complaint that could support a finding that any alleged speaker acted with malice. Plaintiffs make the conclusory allegation that the alleged statements "were made with actual malice—i.e., with knowledge that they were false or in reckless disregard of the truth." (Compl. ¶ 193). But conclusory allegations of malice are insufficient under Rule 8 and <u>Iqbal</u>. <u>See</u> <u>Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.</u>, 674 F.3d 369, 378 (4th Cir. 2012) (rejecting allegation that defendants' alleged statements "were known by them to be false at the time they were made, were malicious or were made with

reckless disregard as to their veracity" as "precisely the sort of allegations that <u>Twombly</u> and <u>Iqbal</u> rejected"). The Complaint lacks any alleged facts supporting a finding of actual malice.

In sum, Plaintiffs fail to state a claim for defamation and, even if Plaintiffs did state a claim for defamation, Defendant is protected by qualified privilege. This claim is therefore dismissed.

### 8. Plaintiffs' Claim for Breach of Legal Duty

In Plaintiffs' final claim, Plaintiffs (specifically, Plaintiff Doe) allege that Defendant CVS breached a duty of care to Doe by declining to fill a prescription for a controlled substance written by Dr. Emery. As discussed above, North Carolina law imposes a general duty of care upon pharmacists "to act with due, ordinary, care and diligence in compounding and selling drugs." <u>Batiste</u>, 32 N.C. App. at 8. This duty generally requires the pharmacist not to add to the drug as prescribed or provide the patient a different drug than was provided. <u>Ferguson</u>, 92 N.C. App. at 340.

Plaintiffs do not allege any such conduct by CVS. Instead, they assert that CVS had a duty to fill every prescription written by CES, regardless of the pharmacist's judgment. (Compl., ¶ 174). Both federal and North Carolina expressly refute that contention. <u>See</u> 21 C.F.R. § 1306.04(a); N.C. Admin. Code § 46.1801(a). Plaintiffs' theory would effectively strip pharmacists of their ability to exercise professional judgment. For this reason, Plaintiffs fail to state a claim for breach of a legal duty under North Carolina law, and this claim is dismissed.

### IV. CONCLUSION

Plaintiffs seek to impose liability on CVS for the decision made by an unidentified CVS pharmacist who allegedly declined to fill a prescription for a controlled substance. The Court has carefully analyzed each of Plaintiffs' separate claims and has found that Plaintiffs fail to state

any cognizable claims against Defendant based on its pharmacists' refusal to fill a prescription for Suboxone ordered by the Plaintiff doctors. In the end, Plaintiffs' alleged claims all fail for the same reason. That is, North Carolina law makes clear that pharmacists have the right to decline to fill prescriptions for controlled substances in the exercise of their professional judgment. <u>See</u> 21 N.C. Admin. Code 46.1801(a) (pharmacist "shall have the right to refuse fill or refill a prescription order if doing so would be contrary to his or her professional judgment").

For the reasons stated herein, Defendants' motion to dismiss is granted and this action is dismissed with prejudice.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion to Dismiss, (Doc. No. 17), is **GRANTED** and this action is dismissed with prejudice.

2. The Clerk is respectfully instructed to terminate this action.

Signed: September 27, 2021

Max O. Cogburn Jr.
United States District Judge

37