# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:20-cv-00382-RJC-DSC

| | | |
|---|---|---|
| **CHURCH EKKLASIA SOZO INC.,** | ) | |
| **HENRY EMERY MD,** | ) | |
| **JEFFREY BISHOP DO,** | ) | |
| **JOHN WOODYEAR MD, and JANE DOE** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| **CVS HEALTH CORP. and** | ) | |
| **CVS PHARMACY INC.** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Document #17) and the parties' briefs.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for the Court's consideration.

## PROCEDURAL AND FACTUAL BACKGROUND

Accepting the factual allegations of the Complaint as true, Plaintiff Church Ekklasia Sozo, Inc. ("CES") is a North Carolina non-profit corporation that operates a drug rehabilitation program for persons with opioid dependency. (Doc. 12 at 9). Plaintiff Henry Emery is a physician who resides in North Carolina. Plaintiff Jeffrey Bishop is an osteopathic physician based in West Palm Beach, Florida. Plaintiff John Woodyear is a physician who practices in Troy, North Carolina. (*Id.* at 2). Emery and Bishop both practice medicine and prescribe controlled substances through CES (together with Emery, Bishop, and Woodyear, the "CES Plaintiffs"). Woodyear serves as CES's medical director. (*Id.* at 11). Plaintiff Jane Doe is an opiate dependent resident of North Carolina

1

who suffers from adult abstinence syndrome and participates in CES's rehabilitation program. (*Id.* at 2).

CES's Supervised Drug Rehabilitation Program operates online under the website name of "bupe.me" and utilizes telemedicine to monitor and treat patients remotely. (*Id.* at 9–10). The program prescribes Suboxone to assist patients in their rehabilitation and to stop their opioid use. Suboxone is a Schedule III controlled substance due to its potential for abuse and physiological dependence. New patients must register online and discuss the program with a medical team member. If an assessment determines the patient is a good fit for the program, a prescription for Suboxone will be sent to a pharmacy chosen by the patient. The patient must undergo counseling to remain in the program and is required to attend a live, online meeting every Thursday. If the patient is unable to attend, they can watch a recording. (*Id.* at 10).

Plaintiffs allege that on July 19, 2019, Doe attempted to fill a prescription for Suboxone written by Dr. Emery at a CVS Pharmacy in Rutherfordton, North Carolina. (*Id.*). The CVS pharmacist declined to fill the prescription, stating she did not recognize the prescribing physician, believed CES's program was an "internet thing," and that the patient had not met personally with the prescribing physician. (*Id.*). Plaintiffs further allege that unidentified CVS pharmacists at other unidentified locations have declined to fill prescriptions for other unidentified CES patients. (*Id.* at 15). Plaintiffs allege only one other instance where a CVS pharmacist declined to fill a prescription written by a CES physician—that on or about July 3, 2020, an unnamed patient unsuccessfully attempted to fill a prescription for Soboxone written by Dr. Bishop at a CVS Pharmacy in Lithonia, Georgia. (*Id.*) Plaintiffs do not attribute any alleged statements to CVS Pharmacy employees made during the transaction.

2

Plaintiffs filed their Amended Complaint on November 5, 2020 alleging eleven counts against Defendants: (1) Disability Discrimination and Failure to Accommodate under the ADA, 42 U.S.C. § 12101 *et seq.*; (2) Disability Discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*; (3) Discrimination under § 1557 of the Affordable Care Act (ACA), 42 U.S.C. § 18116 *et seq.*; (4) Discrimination through Association under the ADA, 42 U.S.C. § 12101 *et seq.*; (5) False Advertising under the Lanham Act, 15 U.S.C. § 1125(a); (6) Breach of a Legal Duty of Standard of Care; (7) Tortious Interference with Contract; (8) Tortious Interference with Prospective Economic Advantage; (9) Defamation *Per Se*; (10) Defamation *Per Quod*; and (11) Unfair and Deceptive Trade Practices in violation of N.C. Gen. Stat. § 75-1.1 *et seq.* (Doc. 12). Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint on December 7, 2020. (Doc. 17).

## DISCUSSION

### A. Standards of Review

Defendant CVS Health has moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Both Defendants have moved to dismiss for failure to state a claim under Rule 12(b)(6).

Rule 12(b)(2) provides for dismissal for "lack of personal jurisdiction." Under Rule 12(b)(2), the defendant is required to affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage. *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal

jurisdiction to survive the jurisdictional challenge." *Grayson*, 816 F.3d at 268 (citing *Combs*, 886 F.2d at 676). Although the court may consider affidavits submitted by both parties, factual disputes and all reasonable inferences must be resolved in favor of the party asserting jurisdiction. *White v. Aetna Life Ins. Co.*, No. 3:20-CV-204-MOC-DSC, 2021 WL 467210, at *2 (W.D.N.C. Feb. 9, 2021).

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In *Iqbal*, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true).

4

Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark [] a notable and generous departure from the hyper technical, code pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

Second, to the extent there are well pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "Where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]' 'that the pleader is entitled to relief,'" and therefore should be dismissed. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Sons of Confederate Veterans v. City of Lexington*, 722 F.3d 224, 228 (4th Cir. 2013) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." *Neitzke v. Williams*, 490 U.S. at 328; *see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs.*, 521 Fed. Appx. 278, 293 (4th Cir. 2013). The court must not "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

### B.  Defendant CVS Health's Motion to Dismiss for Lack of Personal Jurisdiction

Defendant CVS Health argues a lack of personal jurisdiction. There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Helicopteros Nacionales de*

*Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8 & 9 (1984). A court may exercise general personal jurisdiction when the defendant is essentially "at home" in the forum. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). For a corporate (or other entity) defendant, "at home" will usually mean their domicile and their principal place of business. *See id.* at 137. When general personal jurisdiction does not apply, a court may still exercise specific personal jurisdiction when plaintiff makes a sufficient showing that: (1) the defendant purposefully availed themselves of the forum and the benefits and protections of its laws; (2) the plaintiff's claim arises from the purposefully availing conduct; and (3) the exercise of jurisdiction would be constitutionally reasonable. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). Finally, to exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

Plaintiffs concede there is no general jurisdiction over CVS Health, but assert there is specific jurisdiction. (*See* Doc. 20 at 7–8). CVS Health is a holding company with no operations other than those related to its status as a holding company. *See Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 979–80 (N.D. Cal. 2016) (detailing factual evidence that CVS Health is a holding company without operations and dismissing complaint against CVS Health for lack of jurisdiction). CVS Health does not provide pharmacy services or dispense medications, nor does it provide, offer, or place into the stream of commerce any product or service. *Id.* at 980. Accordingly, CVS Health is not authorized to transact business in North Carolina nor does it have a registered agent in North Carolina. (Doc. 19 at ¶ 7; *see also* https://www.sosnc.gov/search/index

(last visited Feb. 4, 2022)). Because CVS Health has not engaged in any conduct in North Carolina, this Court lacks jurisdiction under North Carolina's long-arm statute. *See* N.C. Gen. Stat. § 1-75.4(1)(d) (assessing personal jurisdiction over foreign citizen that is "engaged in substantial activity within this State").

Plaintiffs rest their assertion of specific jurisdiction over CVS Health on its alleged support of opioid abuse victims through the "Guardian Angel" program. *See* https://www.cvshealth.com/news-and-insights/press-releases/guardian-angel-opioids-program-reaching-members-at-critical-time (last visited Feb. 4, 2022). But this program is an Aetna program and not a CVS Health program. Even if it were a CVS Health program, this alone would not permit the exercise of personal jurisdiction under North Carolina's long-arm statute. Plaintiffs have not alleged any "promise" CVS Health allegedly made to the Guardian Angel program (or anyone associated with that program) for their benefit. *See* N.C. Gen. Stat. § 1-75.4(5)(a). Plaintiffs have also not alleged any such promise that CVS Health would perform services in North Carolina or pay them for their services in the state. Thus, N.C. Gen. Stat. § 1-75.4(5)(a) does not empower this Court to exercise specific personal jurisdiction over CVS Health here.

A Fourteenth Amendment Due Process issue would also arise if this Court were to exercise personal jurisdiction over CVS Health. The Court's specific personal jurisdiction inquiry focuses on the connection between defendant's activities in the forum state and whether plaintiff's claims arise out of those contacts. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002). Here, Plaintiffs' claims based upon the denial of Doe's prescription bear no relationship to CVS Health's alleged support of the Guardian Angel program. Plaintiffs are attempting to exaggerate CVS Health's support for a somewhat similar rehabilitation program to categorize it as a "significant dealing" for jurisdictional purposes. There is a complete lack of

dealings between CVS Health, Plaintiffs, and the state of North Carolina. Therefore, this court does not have specific personal jurisdiction over CVS Health and joins other courts in dismissing Plaintiffs' claims for lack of jurisdiction. *See, e.g., Tashjian v. CVS Pharm., Inc.*, 2020 WL 1931859, at *4 (D. Mass. Mar. 13, 2020) (recommending dismissal of CVS Health); *Corcoran*, 169 F. Supp. 3d at 979–84 (dismissing CVS Health); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 835–37 (D.S.C. 2015) (same).

## C. Defendants' Motion to Dismiss for Failure to State a Claim

### 1. Plaintiffs' ADA Claims

#### a. Plaintiff Doe's ADA Claim for Failure to Accommodate

Plaintiff Doe lacks standing to bring an ADA claim. To establish standing, a plaintiff must show: (1) an "injury in fact" that is concrete and particularized and actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury likely will be redressed by a favorable decision. *Nat'l All. for Accessibility, Inc. v. NCP Western Blvd. LLC*, No. 5:11-CV-357-FL, 2012 WL 3834931, at *2 (E.D.N.C. Sept. 4, 2012). Doe brings her claim under Title III of the ADA. This provision only provides for injunctive relief. 42 U.S.C. § 12188; *Basta v. Novant Health Inc.*, No. 3:19-CV-00064-RJC-DSC, 2019 WL 3310098, at *3 (W.D.N.C. July 23, 2019). When a plaintiff seeks injunctive relief, the "injury in fact" element requires more than an allegation of defendant's prior wrongful conduct. *Nat'l All. for Accessibility, Inc.*, 2012 WL 3834931 at *2. A plaintiff must show a "substantial likelihood of future harm. In other words, to establish standing to pursue injunctive relief . . . . under the ADA, [plaintiff must] demonstrate a *real* and *immediate* threat of repeated injury in the future." *Id.* (internal quotations and citations omitted) (emphasis in original). Thus, to have standing to assert an ADA claim, Doe "must allege

that [s]he intends to return to the facility where the alleged injury occurred." *Basta*, 2019 WL 3310098 at *3.

Doe alleges no such thing. She describes her injury as an "economic injury" (Doc. 12 at 24) and focuses her allegations on CVS's alleged refusal to fill her prescription in the past. (*Id.*). None of Doe's allegations reference future harm, much less a real and immediate threat of repeated future injury. Doe does not even meet the minimum requirement described in *Basta* because she never alleges that she intends to return to CVS. In fact, Doe admits that she found "another supplier of the prescriptive medication she needed[.]" (*Id.*). Since Doe does not allege a substantial likelihood of future harm, she lacks jurisdictional standing and dismissal of her ADA claim is required under Rule 12(b)(1).

Moreover, Doe cannot maintain an ADA claim because she does not allege CVS singled her out for disparate treatment. The ADA was enacted "to assure equality of opportunity," 42 U.S.C. § 12101(a)(7), and therefore provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." *Id.* § 12182(a). As the purpose of the ADA is to combat discrimination on the basis of disability, "there is no discrimination under the [ADA] where disabled individuals are given the same opportunity as everyone else." *Doe One v. CVS Pharm., Inc.*, 348 F. Supp. 3d 967, 987 (N.D. Cal. 2018) (rejecting plaintiffs' argument that would expand the ADA when CVS' restrictions applied equally to all consumers).

Plaintiffs do not allege any facts showing CVS singled out Doe for disparate treatment. In fact, Plaintiffs' allegations expressly refute any discriminatory motive or action by CVS. They allege that the CVS pharmacist made statements explaining why she declined to fill Doe's

9

prescription. None of the stated reasons relate to Doe's purported status as a disabled individual. *See, e.g., Zelaya Sorto v. Doe*, No. 5:18-CT-3242-FL, 2020 WL 5709249, at \*6 (E.D.N.C. Sept. 24, 2020) (dismissing ADA claim where challenged activity was not discriminatory); *Knowles v. Lewis*, 5:11-CT-3113-FL, 2014 WL 1117966, at \*12 (E.D.N.C Mar. 20, 2014) (same).

Plaintiffs' ADA claim also fails because pharmacists have the right to exercise their own professional judgment in choosing to fill prescriptions. *See* 21 N.C. Admin. Code § 46.1801(a) (pharmacist "shall have a right to refuse to fill or refill a prescription order if doing so would be contrary to his or her professional judgment"); *see also* U.S. DEA Pharmacist's Manual, EO-DEA 154, 42 (2020) ("A pharmacist is required to exercise sound professional judgment, and to adhere to professional standards, when making a determination about the legitimacy of a controlled substances prescription . . . . The law does not require a pharmacist to dispense a prescription of doubtful, questionable, or suspicious medical legitimacy."). Indeed, federal and state authorities identify circumstances when a pharmacist must refuse to fill a prescription. N.C. Admin. Code § 46.1801(b) ("A pharmacist . . . shall not fill or refill a prescription order if, in the exercise of professional judgment, there is or reasonably may be a question regarding the order's accuracy, validity, authenticity, or safety for the patient"); 21 C.F.R. § 1306.04(a) (pharmacists have a "corresponding responsibility" for the proper dispensing of controlled substances and may not knowingly fill a prescription not issued in the usual course of professional treatment).

Plaintiffs assert that the ADA contradicts and preempts this body of law. (Doc. 20 at 13–14). Nothing in the ADA compels CVS pharmacists to fill prescriptions for controlled substances when doing so conflicts with their professional judgment and corresponding responsibility. Plaintiffs' interpretation of the ADA would not only read into the statute an obligation that is unsupported by the text, but would also effectively preempt North Carolina's pharmaceutical law,

in violation of the canon of statutory construction disfavoring preemption. *See, e.g.*, *Altria Group, Inc. v. Good*, 555 U.S. 70, 77–78 (2008) (when faced with statutory text that is "susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors preemption'").

### b. CES Plaintiffs' ADA Claim for Discrimination by Association

The CES Plaintiffs' ADA claim for discrimination by association also fails. Under the ADA, it is "discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E). To bring a claim for discrimination by association, plaintiff must allege a specific association with the disabled individual. *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 215–16 (4th Cir. 2002). Additionally, this association liability only applies when the defendant discriminates against the plaintiffs (here, the CES Plaintiffs) *because of* their relationship or association with the disabled person (here, Doe). *Fonner v. Fairfax Cty., VA*, 415 F.3d 325, 333 (4th Cir. 2005).

The Fourth Circuit's opinion in *Freilich* precludes the CES Plaintiffs' claim. In *Freilich*, a physician alleged that she was threatened and intimidated by the defendant hospital and denied equal use of facilities and other opportunities because of her association with patients with disabilities. 313 F.3d at 216. The Fourth Circuit affirmed the district court's dismissal of the doctor's claim, holding that such generalized references to association are not sufficient to state a claim for associational discrimination under the ADA. *Id.* (reasoning that "[e]very hospital employee can allege at least a loose association with disabled patients" and that "[t]o allow Dr. Freilich to proceed on such a basis would arm every hospital employee with a potential ADA complaint"). Similarly, the CES Plaintiffs' allegations are insufficient to state a claim for

11

discrimination by association. They only generically refer to having "an association with Plaintiff Doe and all other patients participating in and being treated by" the CES Plaintiffs. (Doc. 12 at 28). At most, this is the type of "loose association" with a disabled patient that the *Freilich* court found was insufficient.

The CES Plaintiffs' associational discrimination claim also fails because their own allegations refute any suggestion that CVS discriminated against them due to their association with Doe. Specifically, Plaintiffs allege that the CVS pharmacist explained she was declining to fill Doe's prescription for Soboxone, not because of the CES Plaintiffs' association with Doe, but rather because she did not recognize the prescribing physician and had concerns about CES practices. Accordingly, these allegations do not support a discrimination by association claim.

### 2. Rehabilitation Act Claim

To establish a *prima facie* case under the Rehabilitation Act, a plaintiff must show that: (1) she has a disability; (2) she was "otherwise qualified" for the benefit in question; and (3) that she has been denied the benefit due to discrimination "solely on the basis" of her disability. 29 U.S.C. § 794(a). The purpose of the Rehabilitation Act is to provide "disabled persons legal rights regarding access to programs and activities enjoyed by all, not a general federal cause of action for challenging the medical treatment of their underlying disabilities." *Mathis v. GEO Grp. Inc.*, No. 2:08-CT-21-D, 2009 WL 10736631, *14 (E.D.N.C. Nov. 9, 2009) (dismissing plaintiff's claim under the Rehabilitation Act for denial of physical therapy) (internal quotations and citation omitted). Plaintiff may not prevail on a claim under the Rehabilitation Act for inadequate medical care. *Id.* (citing *Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)).

12

Plaintiff Doe's claim under the Rehabilitation Act fails for two reasons. First, she fails to allege any facts showing that she was "otherwise qualified" for the benefit at issue. Doe alleges that she is an "individual with a disability" within the meaning of the Rehabilitation Act on account of her opioid dependency and participation in a rehabilitation program. (Doc 12 at 24). She then alleges that she was denied the benefit of receiving Suboxone on account of her disability. (*Id.* at 25). The problem with Doe's claim is that she was only able to receive Soboxone because of her alleged disability (*i.e.*, her opioid dependency). Thus, she was not "otherwise qualified" to receive Soboxone independently from her alleged opioid dependency disability.

This Court joins other courts that have rejected Rehabilitation Act claims identical to Doe's. *See, e.g.*, *Cushing v. Moore*, 970 F.2d 1103, 1108–09 (2d Cir. 1992) (affirming dismissal of claim brought by outpatients at rehabilitation clinic for violation of the Rehabilitation Act premised on termination of methadone treatment, holding that plaintiffs could not demonstrate that they were "otherwise qualified" and explaining the "[R]ehabilitation Act does not create a cause of action based on a handicap that is directly related to providing the very services at issue"); *Mascetti v. Zozulin*, No. 3:09-cv-963(PCD), 2010 WL 1644572, *3 (D. Conn. Apr. 20, 2010) (dismissing Rehabilitation Act claim brought against defendant pharmacy for alleged refusal to dispense pain medication to plaintiff, finding that plaintiff was not "otherwise qualified" and holding "Section 504 does not apply if an individual only qualifies for a benefit or service because of her disability"); *see also Mathis*, 2009 WL 10736631, *14 (dismissing plaintiff's claim under the Rehabilitation Act for denial of physical therapy and explaining that plaintiff "may not receive relief under the Rehabilitation Act for inadequate medical care").

Doe's Rehabilitation Act claim also fails because she was not denied a benefit "solely on the basis" of her disability. *See Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 461

13

(4th Cir. 2012). "Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is substantially the same." *Smith v. North Carolina Dept. of Safety*, No. 1:18CV914, 2019 WL 3798457, *2 (M.D.N.C. Aug. 13, 2019) (citation omitted). But the two statutes differ "with respect to the third element, causation. To succeed on a claim under the Rehabilitation Act, the plaintiff must establish that he was excluded 'solely by reason of' his or her disability." *Halpern*, 669 F.3d at 461. The causation element of the Rehabilitation Act sets a higher bar than the ADA, which requires only that the disability be a "motivating cause" of the exclusion. *Id.* at 461–62 (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468–69 (4th Cir. 1999)). As discussed above, *see supra* Part C(1)(a), Doe cannot meet the ADA's causation threshold, let alone the Rehabilitation Act's more exacting standard. Plaintiffs' allegations expressly refute any discriminatory motive or action by CVS by citing the stated reasons why an unidentified pharmacist allegedly refused to fill Doe's prescription for Soboxone. None of these reasons relate to Doe's alleged disability status. For those reasons, Doe's Rehabilitation Act claim fails as a matter of law.

### 3. Affordable Care Act Claim

Plaintiff's Affordable Care Act claim also fails because the ACA does not give rise to an independent cause of action. "Section 1557 does not create new bases of prohibited discrimination, but rather incorporates the grounds of four longstanding federal nondiscrimination statutes: Title VI, Title IX, the ADA, and Section 504. The implementing Rule [attempts] to merely 'clarif[y] and codif[y] *existing* nondiscrimination requirements' incorporated in Section 1557." *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 671 (N.D. Tex. 2016) (emphasis in original). Accordingly, where Plaintiff's Rehabilitation Act claim fails, her claim arising under the ACA must also fail as a matter of law. *Basta*, 2019 WL 3310098 at *6 (because plaintiff did not state a

14

claim under the Rehabilitation Act, "it is not necessary to determine the applicability of the ACA"); *Hawkins v. Cohen*, 327 F.R.D. 64, 75–76 (E.D.N.C. 2018). As discussed above, Plaintiffs' Rehabilitation Act claim fails and so does her corresponding ACA claim.

### 4. Lanham Act Claim

Plaintiffs' claim for false advertising under Section 43(a) of the Lanham Act fails. To state an actionable claim under Section 43(a), Plaintiffs must establish each of the following five elements: (1) Defendants made a false or misleading description of fact or representation of fact in a commercial advertisement about their own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) Defendants placed the false or misleading statement in interstate commerce; and (5) Plaintiffs have been or are likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with their products. *Verisign, Inc. v. XYZ.com LLC*, 848 F.3d 292, 298–99 (4th Cir. 2017) (quoting *Design Resources, Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015)). "Failure to establish any one of these five elements is fatal to a plaintiff's claim." *Verisign*, 848 F.3d at 299 (internal quotations and citation omitted).

Plaintiffs lack standing to pursue their Lanham Act claims under the two-part test established by the Supreme Court. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). First, the plaintiff must "fall within the zone of interests protected by the law invoked." *Id.* at 129 (internal quotation omitted). The "plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131–32. Second, the plaintiff must allege injuries that were proximately caused by violations of the subject statute. *Id.* at 132. A plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's

advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

Plaintiffs cannot meet this test. Doe clearly lacks standing, as she has not alleged any "injury to a commercial interest in reputation or sales." *Id.* at 131–32. It is long-settled that consumers such as Doe do not fall within the zone of interests protected by Section 43(a), and therefore cannot pursue a false advertising claim under the Lanham Act. *Id.* at 132 ("A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act"); *Made in the USA Found. v. Phillips Foods, Inc.*, 365 F.3d 278, 281 (4th Cir. 2004) (holding same).

The CES Plaintiffs likewise lack standing. Their allegations do not support a finding that they suffered an injury proximately caused by an alleged violation of the Lanham Act. The Complaint lacks any allegations that they have lost a single patient or otherwise suffered a single dollar in economic harm—let alone any allegations connecting any such damage to statements attributed to CVS. Absent such allegations, Plaintiffs' Lanham Act claim fails as a matter of law. *See, e.g., Wall & Assocs. Inc. v. Better Bus. Bureau of Cent. Virginia., Inc.*, 685 F. App'x 277, 279 (4th Cir. 2017) (affirming dismissal of Lanham Act complaint for failure to plead causation where Plaintiffs' complaint "does not identify a single consumer who withheld or cancelled business with it or pointed to a particular quantum of diverted sales or loss of goodwill and reputation resulting directly from reliance on any false or misleading representations by Defendants"); *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 188 F. Supp. 3d 22, 115 (D.D.C. 2016), *aff'd* 743 F. App'x 456 (D.C. Cir. 2018).

Even if Plaintiffs had standing, this claim also fails on the merits because they cannot establish elements (1), (2), and (5). First, there was no false or misleading statement made by CVS.

16

Plaintiffs have not alleged any statement regarding CES or its physicians forming the basis of their Lanham Act claims. Instead, Plaintiffs base their claim on two press releases published on the CVSHealth.com website concerning CVS's collaboration with the "Guardian Angel" social work program launched by Aetna. As detailed in those press releases, CVS's collaboration in the Guardian Angel program helps individuals with opioid dependency in North Carolina, New Orleans, and Tampa access social services to obtain assistance with transportation, food assistance and meal delivery, adult day care, employment services, and housing support, among other services. Citing these press releases, Plaintiffs assert that "Defendant CVS Health recognizes that opioid overdose victims must be subjected to treatment" and that "opioid use disorders must be addressed through treatment centers." (Doc. 12 at 30).

Plaintiffs do not identify any statements in the press releases that they believe are false or misleading, let alone allege any facts demonstrating the falsity of any such statements. They seem to believe that CVS's participation in the Guardian Angel program is somehow inconsistent with the decision not to fill a prescription for Soboxone written by the CES Plaintiffs. But the press releases do not promise that CVS would fill every prescription for Soboxone (or any other controlled substance) presented to its pharmacists regardless of the circumstances. As detailed above, CVS *could not* make any such representation. The press releases do not discuss the dispensing of controlled substances at all. Rather, they concern CVS's work to ensure members of certain communities are able to access necessary social services. Since Plaintiffs have not identified any purportedly false or misleading statements by CVS, their Lanham Act claim must fail. *Verisign*, 848 F.3d at 302–04 (rejecting Lanham Act claim where Plaintiff had not identified any false or misleading statement of fact).

17

Second, Plaintiffs have not identified any false or misleading statement that was material. To qualify as a "material" misrepresentation giving rise to a Lanham Act claim, Plaintiffs must show that the statement at issue would affect a consumer's purchasing decision. *See, e.g., Design Resources, Inc.*, 789 F.3d at 501; *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011). They have not alleged any statements by CVS that would be material to a consumer in deciding whether to seek treatment from CES or its affiliated physicians. The Guardian Angel press releases do not reference the CES Plaintiffs at all. Nor do the press releases address the dispensing of Suboxone generally, the use of telemedicine, or any other aspects that relate to the CES Plaintiffs. The Guardian Angel press releases are wholly irrelevant to any consumer's decision in locating a treatment program. Plaintiffs' Complaint makes no attempt to connect these press releases to the purchasing decision of any consumer. Thus, Plaintiffs have not satisfied the second element.

Lastly, Plaintiffs have not alleged any facts demonstrating that they were injured as a result of the purported misrepresentations. They have not alleged any facts plausibly showing that they have lost a single patient or otherwise suffered a single dollar in economic harm in connection with CVS's Guardian Angel press releases. Similarly, Plaintiffs have not pled any facts plausibly suggesting that they have (or are likely to have) suffered any reputational harm as a result of the Guardian Angel press releases. Nor could they, since the press releases do not concern or reference Plaintiffs in any manner whatsoever. Moreover, Plaintiffs have not alleged that any current, former, or potential CES patient (including Doe) has even seen the Guardian Angel press releases on CVS's website, much less that any such patient has made a decision about CES as a result of these two press releases. Accordingly, Plaintiffs' Lanham Act claim fails.

### 5. Tortious Interference Claims

Plaintiffs' claims for tortious interference with contract and tortious interference with prospective economic advantage both fail. They allege that CVS committed tortious interference by: (1) refusing to fill prescriptions for controlled substances; and (2) making allegedly defamatory statements. Neither basis supports Plaintiffs' claims.

To state an actionable claim for tortious interference with contract, Plaintiffs must plead (1) existence of a valid contract between plaintiff and a third person which confers upon plaintiff a contractual right against the third person; (2) defendant knows of the contract; (3) defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff. *Braswell v. Haywood Reg'l. Med. Ctr.*, 352 F. Supp. 2d 639, 652 (W.D.N.C. 2005).

Plaintiffs have failed to allege the facts necessary to support a claim for tortious interference with contract, whether based upon the alleged refusal to fill Doe's prescriptions or CVS's alleged defamatory remarks. Specifically, Plaintiffs fail to allege that any specific contracts existed between themselves and any specific patients—or that CVS knew such contracts existed. At most, Plaintiffs allege that certain unnamed "registrants" to CES's online platform entered into a narcotics agreement and an informed consent agreement as part of their participation in the online treatment. (Doc. 12 at 10). But Plaintiffs do not provide any specifics. They do not allege whether any of the unnamed persons contracted with Plaintiffs, whether each Plaintiff was a party to such contracts, whether these contracts were at-will or for specified durations, or what services or goods were to be provided pursuant to these contracts. Plaintiffs do not attach copies of any such contracts to the Complaint. *See Williams v. Popular Mortg. Servs., Inc.*, No. 4:10-CV-0020-F, 2011 WL 2678817, at *4–5 (E.D.N.C. June 30, 2011) (dismissing claim for tortious interference with contract where plaintiffs did not attach a copy of the purported contract to their complaint); *see*

19

*also Krawiec v. Manly,* 370 N.C. 602, 606–08, 811 S.E.2d 542, 546–47 (2018) (finding that tortious interference claim fails where there is no allegation that defendant was aware of a contract).

Aside from the fact that there was no contract, CVS never breached any agreement. Plaintiffs' Complaint lacks allegations that any contract was breached, much less allegations showing that CVS intended to induce such a breach. *Bowman v. Reid*, No. 5:14CV179-RLV, 2015 WL 4508648, at *6 (W.D.N.C. July 24, 2015), *aff'd* 646 Fed. App'x 318 (4th Cir. 2016) (dismissing tortious interference claim where contract did not allege a contract with third party that defendants had induced to breach). Plaintiffs do not allege that any patient whose prescription was not filled, or any recipient of the allegedly defamatory statements, terminated his or her contract with Plaintiffs. Without such essential allegations, Plaintiffs' tortious interference with contract claim fails on this basis alone. *Giuliani v. Duke Univ.*, No. 1:08CV502, 2009 WL 1408869, *4 (M.D.N.C. May 19, 2009); *Phelps Staffing, LLC v. C.T. Phelps, Inc.*, 226 N.C. App. 506, 512, 740 S.E.2d 923, 928 (2013); *Artistic Southern Inc. v. Lund*, No. 12 CVS 11789, 2015 WL 8476587, *10 (N.C. Super. Ct. Dec. 9, 2015).

For similar reasons, Plaintiffs have also failed to sufficiently allege a claim for tortious interference with a prospective economic relationship. To plead an actionable claim for tortious interference with prospective economic advantage, Plaintiffs must plead (1) the existence of a business relationship between Plaintiffs and a third party; (2) CVS interfered with that relationship; (3) by maliciously inducing the third party not to enter into a contract with Plaintiffs; (4) that the third party would have entered into but for CVS's conduct; and (5) CVS's conduct was not a legitimate exercise of its rights. *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 701, 784 S.E.2d 457, 463 (2016).

20

As discussed above, Plaintiffs have not adequately alleged (1) the existence of any relationship, (2) that CVS was aware of such relationship, (3) CVS's intentional interference with that relationship, or (4) the absence of justification for CVS's alleged actions. Each of these deficiencies independently mandates dismissal of Plaintiffs' tortious interference with prospective economic relationship claim. They have also failed to show that CVS's actions caused a third party not to enter into a contract with them, which that party would have entered into but for CVS's conduct. *Beverage Sys.*, 368 N.C. at 701, 784 S.E.2d at 463. Plaintiffs do not identify a single potential patient that they lost due to CVS's conduct.

Even if there had been a contract between CVS and the Plaintiffs, CVS's refusal to fill a prescription cannot be the basis for a tortious interference claim. North Carolina law is clear that a pharmacist "shall have the right to refuse to fill or refill a prescription order if doing so would be contrary to his or her professional judgment." 21 N.C. Admin. Code § 46.1801(a). Federal law likewise provides that a pharmacist has a "corresponding responsibility" not to knowingly fill prescriptions issued outside the usual course of professional treatment. 21 C.F.R. § 1306.04(a).

To prevail on their tortious interference claims, Plaintiffs must plead and prove that CVS acted "without justification" and that CVS pharmacists' exercise of their professional judgment "was not a legitimate exercise of its rights." *Braswell,* 352 F. Supp. 2d at 652; *Beverage Sys.*, 784 S.E.2d at 463. A person acts "without justification" only "if he has no sufficient lawful reason for his conduct." *MLC Auto., LLC v. Town of S. Pines*, 207 N.C. App. 555, 571, 702 S.E.2d 68, 79 (N.C. 2010) (citation omitted). To satisfy this element, Plaintiffs must show that CVS was "acting not in the legitimate exercise of [its] own right, but with a design to injure the plaintiff or gain some advantage at his expense." *Id.* (internal quotation and citation omitted). Plaintiffs have not done so. As discussed above, the pharmacist's exercise of professional judgment was a legitimate

exercise of her rights. The pharmacist was not acting "with a design to injure the plaintiff or gain some advantage at [her] expense."

### 6. Defamation Claims

To recover for defamation, Plaintiffs must allege that CVS "caused injury to [Plaintiffs] by making false, defamatory statements of or concerning [Plaintiffs], which were published to a third person." *Craven v. COPE*, 188 N.C. App. 814, 816, 656 S.E.2d 729, 732 (2008); *see also Esancy v. Quinn*, No. 5:05 CV 26, 2006 WL 322607, at *3 (W.D.N.C. Feb. 10, 2006) (same). To constitute defamation, the alleged statement must be "injurious to the reputation of the plaintiffs." *Tyson v. L'Eggs Prods., Inc.*, 84 N.C. App. 1, 12, 351 S.E.2d 834, 841 (1987). Likewise, "expressions of opinion not asserting provable facts are protected speech" and cannot give rise to a claim for defamation. *Squitieri v. Piedmont Airlines, Inc.*, No. 3:17CV441, 2018 WL 934829, at *4 (W.D.N.C. Feb. 16, 2018) ("statements that cannot be proven as verifiably true or false are non-actionable opinion"). North Carolina retains two distinct defamation torts. Libel encompasses written publications that contain defamatory statements, while slander refers to oral statements. *Esancy*, 2006 WL 322607, at *3. Plaintiffs' allegations are limited to oral remarks, properly viewed as asserting slander.

Plaintiffs assert causes of action for slander per se (Count 9) and slander per quod (Count 10). Slander per se is a false oral communication that amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude, (2) an allegation that impeaches the plaintiff in her trade, business, or profession, or (3) an imputation that the plaintiff has a loathsome disease. *Barker v. Kimberly-Clark Corp.*, 136 N.C. App. 455, 459, 524 S.E.2d 821, 824 (2000). In either case, a prima facie presumption of malice and a conclusive presumption of damage arises, obviating the need for the plaintiff to plead and prove special damages. *Id.* at 825. When the defamatory

character of the words does not appear on their face but only in connection with extrinsic explanatory facts, they are only actionable as slander per quod. *Badame v. Lampke*, 242 N.C. 755, 757, 89 S.E.2d 466, 467–68 (1955). There, Plaintiffs must plead and prove special damages. *Id.* Plaintiffs' defamation claims suffer from multiple defects, each of which mandates dismissal.

### a. Plaintiffs have not adequately pled defamatory statements

Plaintiffs have not pled their claims for defamation with sufficient detail to allow CVS to adequately defend against them. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). While Plaintiffs are not required to set forth the allegedly defamatory statement in their Complaint verbatim, "the words attributed to [CVS] must be alleged 'substantially' in haec verba, or with sufficient particularity to enable the court to determine whether the statement was defamatory." *Mbadiwe v. Union Mem'l. Reg'l Med. Ctr., Inc.*, No. 3:05CV49-MU, 2005 WL 3186949, at *4 (W.D.N.C. Nov. 28, 2005); *see also Bowman*, 2015 WL 4508648, at *7. In particular, Plaintiffs must identify the time and place of each alleged defamatory statement. *Orndoff v. Raley*, No. 3:17-CV-00618-GCM, 2018 WL 5284040, at *3 (W.D.N.C. Oct. 24, 2018) (dismissing defamation claims for lack of specificity); *Bowman*, 2015 WL 4508648, at *6 (same); *Mbadiwe*, 2005 WL 3186949, at *4 (same).

Plaintiffs allege the following:

> Various statements made by Defendant CVS Health's and Defendant CVS Pharmacy's agents, servants, employees and/or representatives over the course of dealing with Plaintiff Church Ekklasia Sozo's, Dr. Emery's and/or Dr. Bishop's patients are false, and upon information and belief, include, to wit:
> > a. Doctor is under investigation by the FDA, DEA, medical board or any other government or organizational body;
> > b. Doctor's medical license has been revoked or restricted by an oversight or regulatory body;
> > c. Doctor is a drug dealer;

d. Doctor is writing too many prescriptions;
e. Supervised Drug Rehabilitation Program is not a legitimate treatment program; and
f. Supervised Drug Rehabilitation Program cannot be a telemedicine program.

(Doc. 12 at 19).

These allegations fall far short of the detail required to survive dismissal. Plaintiffs do not identify the speaker of any statement, the recipient of any statement, the person about whom each statement was made, when the statement was made, where it was made, or any other details providing context for the alleged statements. Similar recitals led the court in *Orndoff* to dismiss plaintiffs' defamation claims, finding that the "fragmented quotes" set forth in the complaint failed "to allege who made each statement," "to provide any context for each statement," and therefore did not "allege sufficient facts to make the claim for defamation anything more than mere speculation on the part of the Court." *Orndoff*, 2018 WL 5284040, at *3.

**b. The remaining statements are true**

The only other alleged defamatory statements in the Complaint are set forth in Paragraph 65. (Doc. 12 at 12–13). These statements cannot support a cause of action for defamation because they are all true. *See, e.g., Henderson v. Town of Hope Mills*, No. 5:13-CV-635-FL, 2013 WL 5954816, at *3 (E.D.N.C. Nov. 6, 2013).

Specifically, Plaintiffs allege that a CVS pharmacist at the Rutherfordton location declined to fill the prescription for Soboxone written by Dr. Emery. The pharmacist explained that she was declining to fill the prescription because (1) "she did not recognize the doctor who prescribed the Suboxone," (2) "the program for prescribing the Suboxone was an 'internet thing,'" and (3) Doe did not "go[] in to see a doctor or have any consultation with a doctor prior to receiving this prescription." (Doc. 12 at 12–13).

24

The first statement—that the unnamed pharmacist "did not recognize the doctor who prescribed the Suboxone"—was presumably true. Plaintiffs have not alleged facts showing otherwise. Even if false, this statement was not injurious to Dr. Emery's reputation. *Tyson*, 351 S.E.2d at 841 (holding that defamation fails where statement is "not of such nature that the court can presume as a matter of law that it is injurious to the reputation of the plaintiffs").

The second statement—that Doe received her prescription through a program that was an "internet thing"—is also true. Plaintiffs' own allegations confirm the truth of this statement. The Complaint details that CES patients register for the program, watch videos, and attend meetings, all online. (Doc. 12 at 10). Even if false, the statement would not damage Dr. Emery's reputation and cannot support a claim for defamation per se. *See Jackson v. Mecklenberg County*, No. 3:07-cv-218, 2008 WL 2982468, at *5 (W.D.N.C. July 30, 2008) (to qualify as defamation per se, the statement must be injurious to the plaintiff's reputation even when "stripped of all insinuations, innuendo, colloquium and explanatory circumstances") (citation omitted).

Finally, the third statement—that the patient did not "go[] in to see a doctor" in person to obtain the prescription—is also true. Plaintiffs acknowledge that CES practices telemedicine which does not involve in-person visits with a physician. (Doc. 12 at 9–11). Patients are not even required to participate through livestream video: "If a patient is unable to attend the live meeting . . . the meetings are recorded and available to watch online, which the patient must do if he or she misses the live, online meeting." (*Id.* at 10). Plaintiffs' Complaint confirms that all of the statements alleged were true and not defamatory.

### c. The statements are protected by a qualified privilege

Even if Plaintiffs had adequately pled the elements of their defamation claims, the declarants are entitled to a qualified privilege. North Carolina law is clear that "when an otherwise

defamatory communication is made in furtherance of a political, judicial, social, or *personal duty*, the declarant is entitled to a qualified privilege unless actual malice is shown." *Kling v. Harris Teeter Inc.*, 338 F. Supp. 2d 667, 673 (W.D.N.C. 2002) (emphasis added) (granting summary judgment on defamation claim where qualified privilege applied); *see also Dobson v. Harris*, 352 N.C. 77, 86, 530 S.E.2d 829, 837 (2000). Once a defendant establishes that the communication at issue is subject to a qualified privilege, the burden shifts to plaintiffs to show that the privilege was abused. *Harris v. Procter & Gamble Mfg. Co.*, 102 N.C. App. 329, 332, 401 S.E.2d 849, 851 (1991). Plaintiffs have not met their burden to show that the qualified privilege was abused.

In North Carolina, both statutory and common law mandate that pharmacists owe a duty of care to patients and the public. *See* N.C. Gen. Stat. § 90-85.2. North Carolina courts have recognized that pharmacists owe a "duty to act with due, ordinary, care and diligence in compounding and selling drugs." *Batiste v. Am. Home Prods. Corp.*, 32 N.C. App. 1, 8 (1977); *see also Ferguson v. Williams*, 92 N.C. App. 336, 339–40 (1988). For those reasons, courts have recognized that a qualified privilege applies to statements made by a pharmacist to a patient regarding their prescribing physician, his or her qualifications, the prescriptions involved, or other such issues. *See, e.g., Lefrock v. Walgreens Co.*, 77 F. Supp. 3d 1199, 1201–02 (M.D. Fla. 2015) (qualified privilege found to attach as a matter of law where statements "were made by a Walgreens pharmacist to pharmacy customers at the time the customers attempted to fill prescriptions, and the apparent purpose of the statements was to inform the customers about the physician who wrote the prescription"); *see also DeBinder v. Albertson's, Inc.*, 2008 WL 828775, at *3, *8 (D. Ariz. Mar. 26, 2008) (applying qualified privilege to communication between pharmacist-technician and physician's office manager regarding problems physician's office had with fraudulent prescriptions and plaintiff patient's pattern of "calling in prescriptions all over town").

Although North Carolina courts have not addressed this issue directly, they have recognized that a qualified privilege exists as to statements made by medical professionals relating to the treatment of patients. *See Brodkin v. Novant Health, Inc.*, 264 N.C. App. 6, 14–15, 824 S.E.2d 868, 875 (2019). Such statements are protected because, as the North Carolina Court of Appeals recognized, ensuring that a physician's patients "receive the appropriate medical treatment is unquestionably an important interest for all parties" to the physician-patient relationship. *Id.* This same rationale applies to the statements alleged in Plaintiffs' Complaint. CVS plainly shares a relationship, legal duty, and common interest with its customers.

Since a qualified privilege applies here, Plaintiffs must plead facts showing an abuse of the privilege. A plaintiff can show that a qualified privilege was abused by pleading and proving that the defendant excessively published the purportedly defamatory statement or acted with actual malice in making the statement. *Alpar v. Weyerhaeuser Co.*, 20 N.C. App. 340, 346, 201 S.E.2d 503, 508 (1974). Plaintiffs have not sufficiently alleged either of these abuses.

In sum, Plaintiffs' defamation claims fail because they have not adequately pled defamatory statements, the remaining statements are true, and the statements are protected by a qualified privilege.

### 7.  Unfair and Deceptive Trade Practices Claim

The UDTPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75.1-1(a). To state a claim under the UDTPA, Plaintiffs must plead: (1) CVS committed an unfair or deceptive act; (2) this act was in or affecting commerce; and (3) the act proximately caused Plaintiffs' injury. *Radchyshyn v. Allstate Indem. Co*., No. 1:14-cv-00169-MR-DLH, 2014 WL 4406994, at *3 (W.D.N.C. Sept. 8, 2014). Plaintiffs fail to state a claim under the UDTPA.

They allege that CVS violated the UDTPA by: (1) refusing to fill prescriptions; (2) telling patients that Plaintiff CES's drug rehabilitation program, conducted through telemedicine, is not a valid treatment program; and (3) making purportedly defamatory statements about Dr. Emery.

These allegations are inadequate. Pharmacists are learned professionals whose services are exempted from the UDTPA. And CES and Dr. Emery are not the type of plaintiffs protected by the UDTPA.

The learned professional exemption applies to the CVS pharmacist's actions and bars a UDTPA claim. The UDTPA does not include "professional services rendered by a member of a learned profession." Therefore, it does not extend to actions by a CVS pharmacist. *See* N.C. Gen. Stat. § 75-1.1(b). The "learned profession" exclusion applies if: (1) the person or entity performing the alleged act is a member of a learned profession; and (2) the conduct in question is a rendering of professional services. *Wheeless v. Maria Parham Med. Ctr., Inc*., 237 N.C. App. 584, 589, 768 S.E.2d 119, 123 (2014). The CVS pharmacist satisfies the first prong of this test because she is a licensed health care professional. North Carolina courts have "long held that members of health care professions fall within the learned profession exemption to [the UDPTA], and this exception for medical professionals has been broadly interpreted." *Sykes v. Health Network Sols., Inc*., 372 N.C. 326, 334, 828 S.E.2d 467, 472 (2019) (internal quotations omitted) (licensed chiropractors are members of a learned profession).

The CVS pharmacist also satisfies the second prong of the learned profession test because each of Plaintiffs' allegations—refusing to fill prescriptions, discussing the drug rehabilitation program, and speaking with customers about Dr. Emery—is conduct connected to the pharmacist's provision of medical services. In *Wheeless*, the plaintiff doctor complained that his colleagues had corresponded with the medical board about his professional conduct. 237 N.C. App. at 589, 768

S.E.2d at 123. The North Carolina Court of Appeals affirmed dismissal, emphasizing the broad exception for medical professionals and stating that it "has made clear that unfair and deceptive acts committed by medical professionals are not included within the prohibition of [the UDPTA]." *Id.* The court found the complaint to the medical board integral to the physicians' role of providing medical care. *Id.* at 591, 768 S.E.2d at 124. Likewise, the CVS pharmacist's alleged actions and statements were essential to her providing medical care. Thus, the CVS pharmacist is a learned professional whose conduct is protected under the UDTPA.

Second, Plaintiffs' UDTPA claim fails because they are not proper plaintiffs under the act. The UDTPA declares as "unlawful" all "[u]nfair methods of competition in or affecting commerce" or "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). To show that CVS's conduct violates the UDTPA, Plaintiffs must show that it "offends established public policy"; is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers"; or has a tendency to deceive. *See Champion Pro Consulting Grp., LLC v. Impact Sports Football, LLC*, 116 F. Supp. 3d 644, 652 (M.D.N.C. 2015); *Walker v. Fleetwood Homes of N. Carolina., Inc.*, 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007). The UDTPA is intended "to provide a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within this State, and it applies to dealings between buyers and sellers at all levels of commerce." *In re Brokers, Inc.*, 396 B.R. 146, 160 (Bankr. M.D.N.C. 2008). "[T]he fundamental purpose of [the UDTPA] is to protect the consuming public." *Id.* at 162 (internal quotations and citation omitted).

CES and Dr. Emery cannot assert a claim under the UDTPA because they have no business dealings with CVS. North Carolina courts have recognized repeatedly that an established business relationship between the parties is a critical factor under the UDTPA. *Champion*, 116 F. Supp. 3d

29

at 661 (holding the UDTPA does not apply because there was no business relationship between the parties); *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 658, 464 S.E.2d 47, 54 (1995) (same). This is so because the UDTPA is intended "to maintain ethical standards of dealings between persons engaged in business . . . ." *In re Brokers, Inc.*, 396 B.R. at 160. Plaintiffs have not alleged any activity by CVS that is deceptive, or otherwise "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Champion*, 116 F. Supp. 3d at 652. Nor have Plaintiffs alleged the type of business relationship that the UDTPA was intended to protect. Accordingly, the Plaintiffs' claim for unfair and deceptive trade practices fails.

### 8. Breach of Legal Duty Claim

As discussed above, North Carolina law imposes a general duty of care upon pharmacists "to act with due, ordinary, care and diligence in compounding and selling drugs." *Batiste*, 32 N.C. App. at 8, 231 S.E.2d at 273–74. This duty generally requires the pharmacist not to add to the drug prescribed or provide the patient a different drug. *Ferguson*, 92 N.C. App. at 340, 374 S.E.2d at 440.

Plaintiffs argue that "Defendants willingly originally filled Plaintiff Doe's prescriptions for opioids for due consideration creating a duty for Defendants to continue to protect Plaintiff Doe." (Doc. 20 at 25). Therefore, so the argument goes, the pharmacist's refusal to fill Doe's prescription for opioids needed in her replacement therapy treatment is a breach of legal duty by Defendants. This is not what the pharmacist's duty of care imposes. Plaintiffs essentially assert that CVS had a duty to fill every prescription written by CES regardless of the pharmacist's judgment. Plaintiffs' theory would effectively strip pharmacists of their ability to exercise professional judgment, contrary to both federal and North Carolina law. *See* 21 C.F.R. § 1306.04(a); N.C. Admin. Code § 46.1801(a). There was no breach of legal duty and this claim fails as a matter of law.

**RECOMMENDATION**

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Document #17) be granted.

**NOTICE OF APPEAL RIGHTS**

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. *Diamond v. Colonial Life*, 416 F.3d 310, 315-16 (4th Cir. 2005); *Wells v. Shriners Hosp.*, 109 F.3d 198, 201 (4th Cir. 1997); *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140, 147 (1985); *Diamond*, 416 F.3d at 316; *Page v. Lee*, 337 F.3d 411, 416 n.3 (4th Cir. 2003); *Wells*, 109 F.3d at 201; *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED AND RECOMMENDED.**

Signed: February 25, 2022

David S. Cayer
United States Magistrate Judge